UNITED STATES of America,
Plaintiff–Appellee,

v.

Henry L. YKEMA,
Defendant–Appellant.

No. 88–2113.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 3, 1989.

Decided Oct. 12, 1989.

Michael A. MacDonald, Asst. U.S. Atty., argued, Office of the U.S. Atty., Grand Rapids, Mich., for U.S.

John E. Meeks argued, Grand Rapids, Mich., for Ykema.

Before NELSON and BOGGS, Circuit Judges, and WILHOIT, District Judge.*

BOGGS, Circuit Judge.

Henry L. Ykema appeals his sentence for possession and distribution of cocaine as violating his written plea agreement, the relevant sentencing guidelines, and his constitutional rights. Because we find that the government complied with the plea agreement and the sentencing guidelines, and because appellant's constitutional rights were protected, we affirm.

I

In March 1988, Ykema was indicted in a five-count superseding indictment related to various drug offenses such as conspiracy to distribute cocaine in violation of 21 U.S.C. Secs. 846 and 841(a)(1), and 18 U.S.C. Sec. 2.

Pursuant to a plea agreement, this superseding indictment was dismissed, and appellant agreed to plead guilty to a two-count information. Count 1 charged the possession with intent to distribute of approximately 2 kilograms of cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(B). Count 2 charged the possession with intent to distribute of approximately 10 ounces of cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(C).

Appellant claims that the plea agreement was the result of negotiations in which the government agreed that the use of the word "approximately" 2 kilograms meant that for purposes of sentencing the defendant could claim to have possessed less than 2 kilograms. Appellant also claims that the plea agreement was based on an agreement not to charge 21 U.S.C. Sec. 841(b)(1)(A), thus reducing his minimum sentence from ten years to five years. The key part of the plea agreement states:

"No additional charges will be issued against the Defendant in the Western District of Michigan with regard to the drug trafficking described in the indictment, the information and the Defendant's statements. Any information related to drug trafficking omitted by the Defendant may result in additional charges against the Defendant in the Western District of Michigan."

At the time of the plea, the district judge advised appellant that Count 1 carried a penalty of incarceration for a mandatory minimum of five years and a maximum of forty years. The judge also advised appellant that the guilty plea to Count 1 subjected this case to sentencing under the newly-enacted sentencing guidelines.

In the pre-sentencing report, the government recommended that appellant's sentence be based on his involvement with 31 kilograms of cocaine. Subsequently, this was amended to 10 kilograms to reflect an agreement reached with appellant, who specifically stated in the record that he reserved the right to appeal the issue of how much cocaine the sentence should be based upon.

* The Honorable Henry R. Wilhoit, United States District Judge for the Eastern District of Kentucky, sitting by designation.

The district court listened to counsels' arguments, heard appellant's personal allocution, and then sentenced appellant to 140 months imprisonment on Count 1 and ten years imprisonment on Count 2, the sentences to be served concurrently. Before imposition of sentence, appellant moved to withdraw his guilty plea, after learning that his final sentencing guideline range of incarceration was 135 to 168 months. The district judge denied this motion.

## II

### A

█ Appellant contends that the government violated the plea agreement because information was used in the sentencing report that resulted in an increase in the sentence to the range he would have received if there had been no plea agreement. We find no violation of the plea agreement.

The literal words of the agreement only contemplate that "no additional charges" will be brought against the appellant. The question before us is whether this represented a promise to appellant beyond the literal words, to include avoiding any use of any information concerning cocaine trafficking beyond "approximately 2 kilograms."

█ If a plea agreement is based in part on promises made as an inducement, the promises must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971); *Bercheny v. Johnson*, 633 F.2d 473, 475 (6th Cir. 1980). If the promises are not fulfilled, the defendant's case must be remanded for resentencing according to the original promises. *Santobello*, 404 U.S. at 263, 264, 92 S.Ct. at 499, 500.

In the present case, we are persuaded that the only promise between the parties was that the government would not bring additional charges. Although we make no decision as to what the appellant's or his attorney's *actual* expectations were, the words in the plea agreement before us must be interpreted as a reasonable person would interpret the written words.

The sentencing guidelines explicitly recognize the legitimacy of plea agreements that exclude from presentencing reports information obtained in violation of the agreement. Federal Sentencing Guidelines, Sec. 1B1.8. If this is what appellant wished to have in his plea agreement, this is what he should have bargained for. The fact that he did not is significant. This court has no way of knowing whether the government would have proceeded with the plea agreement had the appellant insisted on excluding such information from sentencing.

However, we also note that federal courts should be especially careful to advise defendants of the ramifications of sentencing under the new guidelines, and that the government should scrupulously avoid any behavior that would constitute trickery. Defendants should have the opportunity to understand how their plea agreement will be given effect. The societal benefit of plea agreements would be undermined if defendants did not get benefits that could reasonably be expected to flow from a plea agreement. Although in time the bargaining of plea agreements under the sentencing guidelines may become more routine and commonplace, it is important that defendants understand their rights and agreements at all times. Otherwise, the availability of cooperative evidence, a very useful tool in our criminal justice system, might be undermined.[1]

### B

█ Appellant further contends that even if the agreement was technically complied with, it is itself a violation of the sentencing guidelines. Specifically, appellant claims that the base offense level should have been determined using only the amount in the plea agreement. Appellant argues that Sec. 1B1.2(a), which states

---

1. In the present case, we note that the district court carefully informed defendant that his sentence might not be what he was expecting under the guidelines. Furthermore, the court apprised the defendant of the statutory range of punishment permitted for the crime to which he was pleading guilty, and therefore complied with Rule 11, Fed.R.Crim.P. *See United States v. Fernandez*, 877 F.2d 1138 (2nd Cir.1989).

that the "court shall apply the guideline most applicable to the offense of conviction," means that the court must use the amount specified in a plea agreement.

This is an incorrect interpretation of the guidelines. The commentary to Sec. 2D1.1, as well as an interpretation of the words of Secs. 1B1.2(a) and 1B1.3 ("relevant conduct"), can only mean that a judge can take all conduct into account in sentencing—not just the conduct supporting a specific conviction. As Sec 1B1.3 specifically states, "all conduct, circumstances, and injuries relevant to the offense of conviction shall be taken into account." Such conduct includes "acts or omissions" which are part of "the same course of conduct, or a common scheme or plan." Sec. 1B1.3(a).

This method of sentencing is not new with the guidelines. Historically, courts have always been able to examine conduct in sentencing that was not part of the specific conviction. *See United States v. Papajohn*, 701 F.2d 760, 763 (8th Cir.1983).

### C

■ Appellant also claims that his sentence violates the *ex post facto* clause of the United States Constitution (art. I, Sec. 9, cl. 3) because the base offense level was determined in part by activities that were committed before November 1, 1987, the effective date of the sentencing guidelines. This contention is without merit.

It is clear that the charge being appealed was based on possession, with intent to distribute, of approximately 2 kilograms of cocaine after November 1, 1987. Indeed, the count was specifically designed for application of the guidelines. It may be true that the amount of cocaine used in the pre-sentence report was determined from activities occuring before November 1, 1987, but this is not a violation of the *ex post facto* clause.

Previously, courts have held that an increase in sentence for a repeat offense does not violate the *ex post facto* clause simply because the first offense was committed before the passage of the repeat offender law. *United States v. Ilacqua*, 562 F.2d 399, 404 (6th Cir.1977) (citing *Gryger v. Burke*, 334 U.S. 728, 68 S.Ct.

1256, 92 L.Ed. 1683 (1948)). This supports the proposition that augmenting punishment for a later offense, based on acts committed before a law is passed, does not violate the *ex post facto* clause.

That is precisely the situation in the present case. Certain criminal acts committed by the appellant before the passage of an enhancement law were used to enhance the penalty for a crime occurring after the passage of the law. Such a rule is justified, as are repeat offender laws, because the heavier penalty for the offense is not an additional punishment for the earlier behavior but is a statutorily authorized punishment for criminal conduct that has occurred after the passage of the law. Furthermore, policy dictates allowing the use of all relevant information for sentencing under the new guidelines. Omitting all reference in sentencing to information that occurred before the effective date of the guidelines would cripple the use of the guidelines to bring conformity to punishment for like criminal conduct.

Finding no error in the proceedings below, we AFFIRM the actions of the district court.

WILHOIT, District Judge, dissents.