**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John P. DAVERN,
Defendant–Appellant.**

**No. 90–3681.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1991.

Decided June 20, 1991.

Rehearing En Banc Granted;
Decision and Judgment Vacated
Sept. 26, 1991.

1042

Marilyn A. Bobula, Asst. U.S. Atty. (argued), Cleveland, Ohio, for plaintiff-appellee.

E. Joshua Rosenkranz (argued) Office of the Appellate Defender, New York City, for defendant-appellant.

Before MERRITT, Chief Judge, and KENNEDY and JONES, Circuit Judges.

MERRITT, Chief Judge.

The issues before us in this sentencing appeal in which the defendant pled guilty to possession of cocaine are as follows: (1) whether the sequence of sentencing steps prescribed by the Sentencing Commission for use in this case, and followed by the District Court, are consistent with the governing statute on sentencing, and (2) whether the Commission has "taken into consideration" and mandated increased

penalties for two "aggravating circumstances," namely (a) possessing a larger volume of white powder surrounding the cocaine in question, and (b) attempting unsuccessfully to buy more cocaine than the amount actually possessed. We reverse because the Commission's sequence of sentencing steps does not comport with the governing statute and because the two "aggravating circumstances" presented by the government have not been "taken into consideration" by the Commission in mandating increased penalties in drug possession cases.

An undercover FBI drug enforcement agent agreed to transfer to the defendant 500 grams of cocaine for $10,500, but the undercover agent in fact transferred to the defendant only 85 grams (3 oz.) of cocaine in a small plastic bag placed inside a mixture of 985 grams of powdered plaster of paris. The total weight of the package was 1070 grams.

The defendant was charged with and pled guilty only to "possession with intent to distribute" of an unspecified quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) (1988) ("it shall be unlawful ... to ... possess with intent ... to distribute" cocaine). The question put to us by the parties is whether the defendant should be sentenced under the U.S. Sentencing Guidelines only for the 85 grams actually possessed, as the defendant insists, or, as the government insists, for the 500 grams he tried to buy and the 1,070 grams, including the powdered plaster of paris, which the undercover agent apparently passed off to him as cocaine. According to the parties, the quantity selected makes a major difference in the sentence imposed under the Guidelines—the difference between a minimum sentence of 1 year and 3 months for 85 grams or 4 years and 3 months for either 500 or 1,070 grams. The District Court diligently conducted three separate hearings on the matter and reluctantly followed the recommendation of the probation office to give the defendant the maximum sentence. The probation officers have been trained by the U.S. Sentencing Commission and apparently were trying to follow the Commission's directions.[1]

## I. The Statutory Framework and the Sentencing Sequence

■ All participants in this exercise in sentencing—the prosecutor, the defense counsel, the probation office, the District Court—appear to have assumed that the series of nine sentencing steps prescribed by the Sentencing Commission in § 1B1.1 yields only one correct sentence for the defendant, one right answer that the District Court must find in this and every other case.[2] We asked the parties to brief the question of the correctness of this approach, and we now conclude that this approach advocated by the Sentencing Commission is inconsistent with the enabling statute governing guideline sentencing.

*First*, the governing statute, 18 U.S.C. § 3553(a), enacted as the Sentencing Re-

---

1. Chief Probation Officer Keith A. Koenning and Probation Officer William E. Del Regno stated in the presentence report their opinion that the base offense level, carrying a minimum sentence of 4 years and 3 months, was "26, pursuant to § 2D1.1(c) [of the Sentencing Guidelines] drug quantity table for an amount of cocaine between 500 grams and 2 kilograms," rather than level 16 for less than 100 grams. They noted at the end of the presentence report that "the disputed amount of drugs revolves around the issue of the attempted 500 milligram purchase by the defendant, resulting in the presentation to the defendant by undercover FBI agent of a package containing 984.96 grams of plaster of paris and 83.51 grams of cocaine. If the defendant's argument for calculation based upon only the actual amount of cocaine included in this package was found to be binding, this would place him at a level 16, less 2 points for acceptance of responsibility, bringing him to a level 14, and a guideline range of 15 to 21 months."

2. The sequence of nine sentencing steps prescribed by the Commission are (1) find "applicable offense guideline section," (2) find the "base offense level," (3) adjust offense level for characteristics of victim and role of defendant, (4) adjust offense level by grouping counts, including uncharged or unconvicted "relevant conduct," (5) adjust offense level for "acceptance of responsibility," (6) adjust for criminal history of defendant, (7) apply sentencing grid for imprisonment, (8) apply sentencing rules on fines, restitution, probation and parole, (9) adjust result for "departures." In this sequence, the Court has little discretion of substance until it reaches the last step.

form Act of 1984, provides in mandatory language in the first sentence that the District Court should consider the facts and fix a sentence "not greater than necessary to comply" with a group of "purposes" or factors: (a) a "just punishment" which will "reflect the seriousness of the offense," (b) the need for "deterrence of criminal conduct," (c) the need to protect the public from "further crimes of the defendant," (d) the need to rehabilitate the defendant through "educational ... and other correctional treatment," and (e) the availability of various alternative forms of sentences. This duty to consider the facts according to these steps and to impose a "just punishment" which is "not greater than necessary" is the first duty required of the sentencing court by the statute. The guidelines are not mentioned in the statute as a sentencing imperative until later in subsection (a)(4) after the sentencing court has first considered the facts in light of these qualitative first principles.[3]

The Sentencing Commission has omitted these steps. The guideline instructions for sentencing do not mention these qualitative considerations concerning punishment to which Congress gave primary importance in framing the statute.

*Second,* after the Court has considered the facts in light of these nonmechanical principles, Congress in subsection (b) of the statute then creates a rebuttable presumption that the proposed Sentencing Guidelines create such a "just punishment" in sentencing cases, a punishment that is "not greater than necessary." But the statute qualifies this presumption significantly. In the first sentence of subsection (b), the statute states that the sentencing court *is not bound by the guidelines* if there is in the case "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." And the statute specifically confines the scope of what the Commission

---

**3.** The full text of § 3553(a) and (b) is as follows:

**(a) Factors to be considered in imposing a sentence.—**
The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of the subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28

U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

**(b) Application of guidelines in imposing a sentence.—**
The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

can be viewed as having "taken into consideration" by limiting it to the "circumstances" stated in the guidelines themselves and the policy statements and official commentary of the Commission. If there is in the case any "circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission," the statute instructs the District Court to return to the first principles outlined in subsection (a) as follows:

In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2) [the four considerations or factors enumerated in the text above]. In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

Thus, the statute itself establishes the sentencing sequence and the way a district court shall go about applying the Sentencing Guidelines. The Commission does not follow the congressional scheme. Two able scholars, the editors of the *Federal Sentencing Reporter*, Professor Daniel Freed of Yale and Professor Marc Miller of Emory, have recently explained that the Commission has "seemingly reversed the sentencing sequence intended by Congress." 3 *Fed.Sent.R.* 237 (1991). Under the statute, the District Court should first consider the facts in light of qualitative standards designed to insure punishment "not greater than necessary" instead of waiting until the very end of the nine-step sentencing process to determine if a "departure" is permissible, as the Sentencing Commission directs in § 1B1.1. Rather, the court should determine at the outset of the sentencing process whether the case presents circumstances "not adequately taken into consideration" by the Commission in proposing its offense level for the crime, keeping in mind the Commission's own admonition on page 1.6 of its Introduction that "it is difficult to prescribe a single set of guidelines that encompasses the vast range

of human conduct potentially relevant to a sentencing decision." If the District Court determines at the outset that the facts and circumstances of the case should render the Guidelines inapplicable, the Court "shall impose an appropriate sentence having ... due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses." The Court should compare the Commission's proposed offense level for the crime to the first principles outlined by Congress and determine at the outset whether the Commission's proposed level for the crime adequately takes into account the circumstances of the case in light of the need for a "just punishment not greater than necessary."

The sentencing court should keep firmly in mind that the Commission's proposed offense level for the crime is simply a proposal to the courts to be weighed during the initial qualitative steps in the sentencing sequence.

In its "Application Instructions" for applying the Guidelines contained in § 1B1.1, the Commission does not call attention to the statutory requirement in § 3553(a) or in the first sentence of § 3553(b) that the District Court determine if a circumstance exists that would make the Guidelines inapplicable. The Applicable Instructions counsel the court to consider such a circumstance, if at all, only as a possible "departure" in step 9 at the end of the process after the court has already found that an "applicable offense guideline section" exists and seven other intervening "steps" have been completed that assume the existence of an applicable section and offense level. Because the statute itself states instead that if an "applicable sentencing guideline" does not exist the court is not bound by the guidelines, logically this determination should be made at the outset and not after the court has accepted the proposed "applicable offense guideline section" and "offense level" and has completed eight other steps on the assumption that the guideline is applicable.

The legislative history of § 3553(b) states unambiguously that the District Court

should first consider whether there are facts and circumstances which make the Commission's proposed sentencing level inappropriate. The legislative history establishes an order for considering "the nature and circumstances of the offense," including "a pertinent aggravating or mitigating circumstance." The District Court shall perform this function first and then decide whether to "impose a sentence outside the guidelines." The Senate Report suggests the proper sequence. Referring to § 3553(a) and (b), the Senate Report explains:

> The bill requires the judge, before imposing sentence, to consider the history and characteristics of the offender, the nature and circumstances of the offense, *and the purposes of sentencing.* He is *then* to determine which sentencing guidelines and policy statements apply to the case. Either he may decide that the guideline recommendation appropriately reflects the offense and offender characteristics and impose sentence according to the guideline recommendation or he may conclude that the guidelines fail to reflect adequately a pertinent aggravating or mitigating circumstance and impose sentence outside the guidelines. (Emphasis added.)

S.Rep. No. 98–225, 98th Cong.2d Sess., reprinted in 1984 U.S.Code Cong. & Admin. News 3182, 3235.

The section-by-section analysis of the 1987 Amendments to the Sentencing Reform Act of 1984 by the House of Representatives reinforces the view that the correct sequence of sentencing steps must first take into account § 3553(a):

> Section 3553(a) as enacted by the Sentencing Reform Act of 1984 requires that the court (1) consider several factors, including the purposes of sentencing, and (2) "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing. Thus, if the court finds that the sentence called for by the applicable sentencing guidelines is greater than necessary to comply with

the purposes of sentencing, section 3553(a) would seem to require the court to impose a more lenient sentence.

Such an interpretation, it might be argued, is inconsistent with the Sentencing Reform Act's intention to limit judicial discretion in sentencing. That argument, however, is not convincing. The Sentencing Reform Act of 1984 limited, but did not eliminate, judicial sentencing discretion. Section 3553(a) does not give the court unlimited discretion in sentencing, but rather authorizes the court to depart from the guidelines only if the court finds that the sentence called for by the guidelines is greater than necessary to serve the purposes of sentencing.

133 Cong.Rec. 31,947 (1987). The Sentencing Commission has declined to follow this language. The view of the Sentencing Commission, as reflected in the remarks of senators on the Senate floor, contradicts the view of the House of Representatives on this matter. 133 Cong.Rec. 33,106–10 (1987).

The nonqualitative guideline application process advocated by the Sentencing Commission, which omits the initial steps outlined by Congress designed to insure individualized sentences "not greater than necessary,"[4] insures maximum deference by judges to the Commission's complex code of interlocking rules that seek to mete out exact punishments for different crimes. Such a mechanical application of a complex code has the effect of delegating more sentencing responsibility to a sentencing bureaucracy—to probation officers who in turn are now trained by the Commission to apply the steps of the Applicable Instructions. It reduces the responsibility of the judge for the result, and it does not emphasize the court's first duty under § 3553(a): to impose a "just punishment" which is "not greater than necessary to comply" with the sentencing objectives established by Congress.[5]

Unless courts interpret the statutory guideline application process in the more

---

4. The Senate Report also states that Congress "does not intend that the guidelines be imposed in a mechanistic fashion," nor "eliminate the thoughtful imposition of individualized sentences." *Id.* at 3235.

5. In devising the levels of punishment for the guidelines, the Commission states that it "analyzed data drawn from 10,000 [pre-guidelines] pre-sentence investigations" but "departed from

flexible manner suggested in § 3553(a) and in the legislative history, Justice Scalia's forecast in dissent in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 675, 102 L.Ed.2d 714 (1989), will have come true. Although they are "given the modest name 'guidelines' they [will] have the force and effect of laws," *id.* 109 S.Ct. at 676, and the responsibility vested in judges by Congress to insure a "just punishment" will have been removed from the judiciary and delegated to a body "completely divorced from any responsibility for execution of the law or adjudication of private rights under the law." *Id.* at 679.

■ The legal effect of the more flexible approach to the guidelines outlined here is to transform mandatory rules into the more "modest name 'guidelines' " in those cases in which the Commission's proposed guideline sentence is "greater than necessary" or in which the parties present a legitimate "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration." When such a circumstance is presented, the guidelines become inapplicable as mandatory rules to be followed by the District Court without regard to its own judgment. Instead, the guidelines become more general principles of sentencing to be used in light of the principles of sentencing outlined in § 3553(a).

## II. The Two Aggravating Circumstances

If we apply the statute in this manner, the question then is whether the guidelines specify an applicable offense guideline section or range that takes into account either of the two aggravating circumstances which the government asserts should raise the offense level to 26, namely: (1) the fact that the 85 grams of cocaine was surrounded by 985 grams of powdered plaster, or (2) the fact that the defendant negotiated to purchase, although never possessed, 500 grams. The government asserts, and the District Court and its probation officers agreed, that both of these aggravating circumstances are covered by Guideline 2D1.-1(c)(9), which specifies an offense level of 26 for possession of 500 to 2,500 grams of cocaine. The government argues that these aggravating circumstances mean that the case is not covered by offense level 16 of the Guideline for less than 100 grams, Guideline § 2D1.1(c)(14).

### A. The Plaster of Paris

■ The government first submits that the defendant should be sentenced for the weight of the plaster of paris. It is not clear what the Guidelines intend in this case or whether the Commission considered this circumstance. With respect to possession of the 985 grams of plaster as an aggravating circumstance, the Guidelines say only that "the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." [6] There is no evidence that the Commission considered a case in which the cocaine is separately wrapped in a plastic bag inside a mixture of plaster and not adulterated or alloyed with the plaster. If the grains of cocaine were mixed with the grains of plaster, the government would be on firmer ground in

the data at different points for various important reasons." *U.S. Sentencing Commission Guidelines Manual,* Introduction pp. 1.3–1.4 (Nov. 1, 1990). The guidelines have resulted in much greater reliance on imprisonment and on longer sentences than was formerly the case. For example, in 1984 and 1985, before the guidelines came into effect, 50% of federal criminal defendants were sentenced to imprisonment and 50% received fines and probationary or other alternative sentences. In 1989 under the guidelines 87% of defendants were sentenced to terms of imprisonment. *United States Sentencing Commission, 1989 Annual Report* 42–43, 52, 63 (1990) (Tables V, VI, X and Fig. VIII).

As a consequence the number of federal prisoners is increasing at the rate of approximately 15% a year. *Id.* at Table XVII. See also Oberlies, *Reviewing the Sentencing Comm'n's 1989 Annual Report,* 3 *Fed.Sent.R.* 152 (Nov.–Dec. 1990) ("Though the Commission offers no analysis, these numbers seem to confirm a tremendous projected growth in Federal prison population—one of the key unexamined issues of guideline sentencing").

**6.** Indeed, the Seventh Circuit divided sharply on a related question involving the weight of LSD for sentencing purposes, and the Supreme Court has granted certiorari to resolve the question.

arguing that the Commission considered this circumstance. The District Court and the probation officer erred in concluding that the sentencing sequence under the statute and the sentencing guidelines mechanically requires an offense level of 26 for this reason.

### B. The Defendant's Intent to Buy 500 Grams

The guidelines are more convoluted on the second aggravating circumstance. We must keep in mind that the defendant was charged with and pled guilty only to possession, and not conspiracy or attempt.

█ The Guidelines treat the inchoate crimes of "attempt" and "conspiracy" in one section, § 2D1.4, and the separate crime of possession in a separate section, § 2D1.1. The question is whether the Commission has stated with clarity how it proposes to deal with a defendant who is charged with and convicted only of possession of a small quantity of drugs but who also may have committed other conspiracy or attempt crimes. For example, if in a drug transaction a defendant attempts to buy 100 kilos of cocaine but in fact possesses, is indicted for and pleads guilty to possession of only 1 ounce, has the Commission made it clear either in the Guidelines or the Commentary that the defendant must also be sentenced under § 2D1.4 for "attempt" or "conspiracy" to purchase the 100 kilos in addition to the one small possession offense for which he is convicted? The Guidelines and Commentary are not clear on the question of the treatment of this aggravating circumstance. It is not

clear from the language of the Guidelines and Commentary whether the Commission intends in such a case that the defendant be sentenced or intends that the defendant not be sentenced for the other unindicted, unconvicted offense. We conclude that the Commission's position is ambiguous, and the aggravating circumstance has not been fully taken into account.

It is not clear that the Commission considered a defendant's intent to buy more cocaine as an aggravating circumstance for which he can be sentenced in a simple possession case. Obviously the defendant did not in fact possess what he did not ever get, and to sentence him for that unconvicted crime is a legal fiction. The only way the Commission could be said to have contemplated sentencing the defendant for the additional unpossessed and uncharged amount as an aggravating circumstance would be to find that the defendant's intent to buy more is "relevant conduct" under § 1B1.3(a)(2), which cross-references § 3D1.2(d).[7] We will analyze the problem in terms of the Commission's commentary on relevant conduct.

The government's theory is that the defendant could have been, but was not, charged or convicted of an "attempt" to possess, or "conspiring" with another to possess 500 grams. Therefore, the additional 415 grams over and above the amount actually possessed must be used as an aggravating circumstance and the defendant must be sentenced for these circumstances as a part of the possession offense.

---

See *United States v. Marshall*, 908 F.2d 1312 (7th Cir.), *cert. granted sub nom. Chapman v. United States*, —— U.S. ——, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990).

**7.** The meaning of these sections is not easy to follow. They say:

§ **1B1.3.** *Relevant Conduct (Factors that Determine the Guideline Range)*
(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following ...

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.
§ **3D1.2.** *Groups of Closely–Related Counts*
All counts involving substantially the same harm shall be grouped together into a single Group. *Counts involve substantially the same harm within the meaning of this rule....*
(d) When the offense level is determined largely on the basis of the total amount of harm or less, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

It is not clear to us that the Commission intended in each case—and the Commission does not anywhere clearly say that it intends—to raise the punishment by including as a mandatory aggravating circumstance uncharged conduct that amounts to a conceptually different offense from the offense of conviction. Attempts or conspiracies are inchoate crimes not of the same character as the substantive offense of possession, and they are not covered by the same guideline section.

As a general theory, sentencing under the Guidelines is limited to the "offense of conviction." § 1B1.2(a). But § 1B1.3 on "relevant conduct" permits a limited, though uncertain, deviation from charge offense sentencing. "Commentary" Note 2 and the "Background" comment following § 1B1.3 attempt to explain the Commission's theory, but the reasoning is ambiguous.[8]

The "Commentary" and "Background" do not indicate that conceptually distinct crimes should be conflated. They only indicate that the same crimes may sometimes be conflated, but even here some conceptually identical crimes (e.g. bank robbery) may not be conflated. No stated principle distinguishes those conceptually identical crimes which may be conflated from those that may not. The relevant commentary says that in drug cases,

> where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales,

but it does not say that unconvicted conspiracy or distribution offenses should be conflated with a possession offense. The Commentary goes on to say that "in an embezzlement case, for example, embezzled funds that may not be specified in any count of conviction are nonetheless included in determining the offense level if they were part of the same course of conduct or part of the same scheme or plan as the count of conviction." But:

> On the other hand, in a robbery case in which the defendant robbed two banks, the amount of money taken in one robbery would *not* be taken into account in determining the guideline range for the other robbery, even if both robberies were part of a single course of conduct or the same scheme or plan. (This is true whether the defendant is convicted of one or both robberies.)

§ 1B1.3, pp. 1.17, 1.19. The Guidelines and Commentary do not say what sentencing principle leads the Commission to treat bank robbery more leniently than drug sales and embezzlement for purposes of "relevant conduct."

It is true, as our dissenting colleague maintains, that the relevant conduct provisions in Application Note 12 to § 2D1.1 say that the "quantities of drugs not specified in the count of conviction *may* be considered in determining the base offense level," but it does not say that they "may" be considered if the additional amounts involve a conceptually distinct drug offense, let alone that they "must" be considered. It is also true, as the dissent maintains, that § 1B1.3 says that "all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" may be considered, but again this language is ambiguous and does not necessarily require conflating conceptually distinct unconvicted offenses. In light of the commentary quoted above, the guidelines do not even necessarily require conflating offenses of the same character.

We believe that ambiguity characterizes many aspects of the relevant conduct provi-

---

**8.** Judge—and former Commissioner—Breyer has attempted to explain the "compromise" between "real offense" and "charge offense" systems of sentencing which undergird the Guidelines, but he admits that "[o]ne can, of course, criticize the Commission for having compromised at the wrong point." Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest,* 17 HOFSTRA L.REV. 1, 12 (1988). Since Judge Breyer's general point must be applied to each specific offense, we are unwilling simply to characterize Davern's conduct as "relevant" for enhancement purposes without further examination.

sions. The most that can be said for the Guidelines in this respect is that the Commission permits and probably intended in most instances that additional uncharged conduct should be used as an aggravating circumstance *if the nature of the additional offense is the same as the offense of conviction*. Additional amounts of drugs possessed can be used if possession is the offense, but there is no clearly expressed intent to conflate for sentencing purposes the separate unconvicted offenses of possession, attempt, conspiracy, distribution, criminal enterprise, RICO or a host of other drug crimes. The meaning of the Commentary on this matter is unclear, but it certainly suggests that the Commission did not focus on the type of aggravating circumstance presented in this case in which the nature of the attempt offense is not the same as the offense of conviction.

The dissent's argument that Application Note 12 to § 2D1.1 mandates a sentence for unconvicted attempts and conspiracies in a possession case is also unpersuasive. The fact that Note 12 to § 2D1.1 says that "[i]f the offense involved negotiation to traffic in a controlled substance, *see* Application Note 1 of the Commentary to § 2D1.4" ["Attempts and Conspiracies"] does not mean that a defendant convicted of only possession should be sentenced as though convicted of a conspiracy to distribute or an attempt to purchase. It merely cross-references the section involving inchoate or incomplete crimes in which "negotiation to traffic" may be elements of the offense. Presumably this means that a defendant convicted also of attempt or conspiracy should be sentenced under the section for these crimes and not the section for possession. We think that the most that can be said for the dissent's position is that the Commentary is ambiguous in this respect.[9]

We believe that the dissent misinterprets the cases on this point. In each of the cases relied upon by the dissent, the defendant had at least been charged with the offense giving rise to the increased sentence, and in most of the cases the sentence was increased for an additional offense of the same character as the offense of convictions. For example, in *United States v. Perez*, 871 F.2d 45 (6th Cir.), *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989), the jury convicted the defendant of conspiracy as well as possession, and the District Court correctly included in the offense level for conspiracy 10 grams of cocaine that were the subject of an incomplete transaction. In *United States v. Smith*, 887 F.2d 104 (6th Cir. 1989), the defendant was convicted of possessing 4 ounces of cocaine and sentenced for additional amounts which he also possessed. No sentence was imposed for a different offense not covered by the same guideline section. Similarly, in both *United States v. Ykema*, 887 F.2d 697 (6th Cir.1989), and in *United States v. Sailes*, 872 F.2d 735 (6th Cir.1989), the defendant was convicted of possession and his sentence was increased for additional acts of possession. Moreover, the authority of the Fifth Circuit case cited by the dissent, *United States v. Garcia*, 889 F.2d 1454 (5th Cir.1989), is now questionable in light of in *United States v. Martin*, 893 F.2d 73, 75 (5th Cir.1990), which expresses its "concern about applying the guidelines for an offense for which the defendant had not been convicted" and states ("we now hold") that such a sentence is improper on a guilty plea unless the defendant enters a formal stipulation that establishes the different offense.

One additional point should be made. It is not clear under the statutory enabling act that the Commission has the authority to impose an additional or "incremental" penalty for uncharged criminal conduct of a different character than the offense of conviction. The enabling act allows the Commission to consider in drafting Guidelines "the appropriateness of imposing an

---

**9.** Indeed, the Eighth Circuit noted the distinction between possession and attempt or conspiracy, and could appeal only to a "logical reading" of the Guidelines in connecting the two conceptually distinct offenses in *United States v. Foley*, 906 F.2d 1261, 1264 (8th Cir.1990). The Eighth Circuit's resort to "logic"—*i.e.* presuming a connection between the different offenses on the strength of a cross-reference—suggests that the Commentary is too ambiguous to apply in Davern's case.

incremental penalty for each offense in a case in which a defendant is *convicted* of ... multiple offenses committed in the same course of conduct," 28 U.S.C. § 994(*l*) (emphasis added), but the enabling act does not expressly authorize guidelines which impose an "incremental" penalty for conduct outside the offense of conviction. By using the word "convicted," Congress may well have intended to prevent the Commission from ordering judges to sentence for unconvicted crimes for which the defendant has not received notice in the indictment and an opportunity to defend in the traditional way. It may well be that this is one reason the Commission left the problem open and did not focus clearly on the "aggravating circumstances" of other unconvicted crimes.[10]

The reason given by the Commission for rejecting its initial system of real offense sentencing and returning to a system of charge offense sentencing is that "the Commission found no practical way to combine ... the large number of diverse harms arising in different circumstances," nor a way to satisfy "the need for a fair adjudicatory procedure" because of the "potential existence of hosts of adjudicated 'real harm' facts in many typical cases." Guidelines p. 1.5. Any effort to take into account the "hosts" of "real harm facts" that may constitute other uncharged, unconvicted offenses such as conspiracy and attempt would counsel a court, like the Commission itself, to retreat from mandatory sentencing rules concerning such facts. Such facts should constitute "aggravating circumstances" to be weighed in the individual case in context and not made a part of a mandatory sentencing grid. The Sentencing Commission itself has convincingly stated the reasons for not treating such facts as mandatory relevant conduct which leave the District Court no choice but to increase the sentence. It would also be inconsistent with the first principle of sentencing enunciated by Congress to impose a "just punishment no greater than necessary."

### III. Conclusion

■ Thus we conclude that district courts must follow the sentencing process established by Congress in § 3553(a) and (b), as outlined above. This process provides for a mandatory guidelines sentence at a particular level if, but only if, in specifying the offense level to be applied the Commission took into account all of the aggravating and mitigating circumstances in the case. If there is such a circumstance not taken into account, then there is not one right answer under the Guidelines. In such a case the District Court "shall impose an appropriate sentence having due regard" for the Guidelines. For the reasons stated, we do not believe that the Commission has "taken into account" the circumstances in this case. The District Court should resentence the defendant under the more flexible procedure and the qualitative standards set out in the last two sentences of 18 U.S.C. § 3553(b).

Accordingly, the judgment of the District Court is reversed and the case remanded for resentencing.

KENNEDY, Circuit Judge, concurring and dissenting.

I agree with the majority that the plaster of Paris in which the bag of cocaine was concealed should not be included in the weight of the controlled substance in determining the Guideline sentence in this case. However, the District Court also imposed the sentence it did because under the Guidelines the weight of the controlled substance which defendant bargained for is part of the relevant conduct to be considered in fixing the offense level. Unlike the majority, I find no error in the District Court's computation of the base offense level of 26.

I am unable to agree with the majority that the sentencing judge has the discre-

---

**10.** Judge—and former Commissioner—Breyer, Judge—and Chairman of the Commission—Wilkins, and Professor—and Commissioner—Nagel have not discussed this particular provision of the enabling act with regard to "relevant conduct." *See* Breyer, *supra;* Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.REV. 495 (1990); Nagel, *Structuring Sentencing Discretion: The New Federal Sentencing Guidelines,* 80 J.CRIM.L. & CRIMINOLOGY 883 (1990).

tion to impose a sentence considering only the factors mentioned in 18 U.S.C. § 3553(a) and may disregard the direction of part (b) that:

> The court *shall* impose a sentence of the kind, and within the range, referred to subsection (a)(4) *unless* the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. (Emphasis added.)

Subsection (a)(4) provides:

> the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(1) and that are in effect on the date the defendant is sentenced.

Thus, although under subsection (a) this is only one of the factors the sentencing court is to consider, under (b) this factor overrides all the other factors where it applies. The majority seeks to read subsection (b) as creating a "rebuttable presumption," but does not explain how it reaches that conclusion in view of the mandatory word "shall." The only exception in the statutory directive to impose the Guideline sentence is if there is an "aggravating or mitigating circumstance of a kind, or to a degree" not taken into account by the Guidelines. Here, there is no such aggravating or mitigating circumstance. The factors which the majority states are to be treated as aggravating factors are instead factors used to determine the base offense level.

The majority argues that the sentencing court should first consider whether there is such an "aggravating or mitigating circumstance," that is, one not taken into account in setting the Guideline. I do not see how this can be done without first determining the Guideline sentence. Until the judge has done so, it would seem impossible to determine whether the mitigating or aggravating circumstance had in fact been taken

into account. For example, if the use of a gun, or the taking of a hostage is the aggravating circumstance, the judge clearly must know whether that has been taken into account in setting the Guideline.

What the majority really seems to be arguing is that following the Guidelines may result in a sentence far greater than necessary to comply with the purpose for which sentence is to be imposed as set forth in subsection (a)(2). Many would agree that application of the Guidelines appears to result in sentences that are too severe or too lenient and that Guideline directives that do not permit the sentencing judge to consider factors historically taken into account at sentencing, such as family history and responsibilities, lack of education or opportunity, etc., create serious disparity. However, Congress determined that discretion should be withdrawn from judges and that Sentencing Guidelines which by their terms are largely mandatory should be used instead.

Defendant's negotiation for, and attempt to purchase, 500 grams of cocaine is "relevant conduct" which contributes to setting the base offense level under Guideline section 1B1.3. Hence, since it is taken into account in fixing the base offense level, it cannot be an "aggravating factor" not taken into account. Defendant pled guilty to possession of cocaine with intent to distribute. Section 2D1.1 is the most applicable Guideline section. Application Note 12 to section 2D1.1 makes clear that the specific quantity of drugs mentioned in the indictment is not controlling.[1] That note states that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct) ... If the offense involved negotiation to traffic in a controlled substance, *see* Application Note 1 of the Commentary to § 2D1.4." If we turn then to Application Note 1 we find that it provides:

> If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount.

---

1. "The Sentencing Commission's application notes are contemporaneous explanations of the

Guidelines by their authors, entitled to substantial weight." *United States v. White,* 888 F.2d

Although that note is located under a heading "Attempts and Conspiracies," as the Fifth Circuit points out in *United States v. Garcia,* 889 F.2d 1454 (5th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990), its application is not limited to attempts and conspiracies. The court notes that the admittedly appropriate Guideline section specifically directs the sentencing court to that note if the offense of conviction involves "negotiation to traffic" as it did here. In *Garcia* defendant was convicted of distributing eight ounces of cocaine. However, he had negotiated for the sale of sixteen ounces and was capable of producing sixteen ounces. The court held that the District Court had appropriately used the sixteen ounces to determine the offense level.

In *United States v. Perez,* 871 F.2d 45 (6th Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989), defendant was convicted of various drug counts, among them possession with intent to distribute 500 or more grams of cocaine. *Perez* argued that the Guidelines were improperly applied and particularly disputed the selection of the base level. We held:

> The district court properly set the base level at 28 given the amount of cocaine involved. Under the sentencing guidelines, the amount of the drug *being negotiated,* even in an uncompleted distribution, shall be used to calculate the total [a]mount in order to determine the base level.

*Id.* at 48 (emphasis added).

Again, in *United States v. Sailes,* 872 F.2d 735 (6th Cir.1989), we held that the District Court properly aggregated the total quantity of drugs involved to determine the appropriate sentence despite the defendant's plea of guilty only with respect to a smaller amount. Defendant Jo Ann Sailes was charged with aiding and abetting possession, with intent to distribute, cocaine.

Two quantities of drugs (36 grams and 780 grams) were found in her home, placed there by the son whom she knew to be in the drug business. She knew of the smaller quantity and pled guilty to possession with intent to distribute that amount. Although Mrs. Sailes was unaware of the presence of the larger quantity, the District Court nonetheless found that her son's possession of the two quantities was part of the same course of conduct or common scheme or plan, and therefore, applying section 1B1.3, the Court held that since the aiding and abetting of the son's possession of the larger amount was part of the same course of conduct or common scheme or plan as the offense of conviction, the larger amount had to be included in the base level.

Yet again, in *United States v. Smith,* 887 F.2d 104 (6th Cir.1989), we applied the relevant conduct provisions of the Guidelines to a drug case. There we held that the District Court erred in failing to include in the base offense level drug quantities from a dismissed count. This Court ruled:

> [W]e hold that the district court erred by holding "that the conduct necessary to support inclusion in the Base Offense Level must be established by a finding of the jury, a plea of guilty confirmed by a finding of guilt in open court, or a stipulated offense other than the offense of conviction on a plea of guilty or *nolo contendere."* In its sentencing determination, the district court should have considered *all* conduct that was part of the same course of conduct or a common scheme or plan as the offense of conviction—including possession of the drugs charged in Count Two.

*Id.* at 108 (emphasis added; footnote omitted). *See also United States v. Ykema,* 887 F.2d 697, 700 (6th Cir.1989) ("The commentary to Sec. 2D1.1, as well as an interpretation of the words of Secs. 1B1.2(a) and 1B.1.3 ('relevant conduct'), can only mean

490, 497 (7th Cir.1989); *see also United States v. Rutter,* 897 F.2d 1558, 1561 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). Indeed, the commentary that accompanies the guideline sections "is to be treated as

the legal equivalent of a policy statement," U.S. S.G. § 1B1.7, and Congress has mandated that policy statements of the Commission be considered in sentencing. 18 U.S.C. § 3553(a)(5).

that a judge can take *all* conduct into account in sentencing—not just the conduct supporting a specific conviction" (emphasis added)), *cert. denied,* —— U.S. ——, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990).

Our decisions in *Perez, Sailes, Smith,* and *Ykema,* which I believe we should follow and apply here, are in accord with decisions of the other circuit courts of appeal, which have uniformly held in drug cases that the base offense level should be determined by the amount of drugs in the defendant's relevant conduct, not just amounts in the offense of conviction or charged in the indictment. *See, e.g., United States v. Lawrence,* 915 F.2d 402, 406–08 (8th Cir.1990); *United States v. Restrepo,* 903 F.2d 648, 652–53 (9th Cir.1990); *United States v. Rutter,* 897 F.2d 1558, 1560–62 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990); *United States v. Alston,* 895 F.2d 1362, 1369–70 (11th Cir.1990); *United States v. White,* 888 F.2d 490, 498 (7th Cir.1989); *United States v. Blanco,* 888 F.2d 907, 909–11 (1st Cir.1989); *United States v. Williams,* 880 F.2d 804, 805–06 (4th Cir. 1989); *United States v. Fernandez,* 877 F.2d 1138, 1141–42 (2d Cir.1989); *United States v. Taplette,* 872 F.2d 101, 105 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989).

In summary, under section 1B1.3 where the Guidelines specify more than one base offense level the base offense level is to be determined on the basis of (a) "all acts ... committed ... by the defendant ... during the commission of the offense of conviction, in preparation for that offense, ... or that otherwise were in furtherance of that offense," U.S.S.G. § 1B1.3(a)(1), or (b) all "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction," if the

offenses are "of a character for which section 3D1.2(d) would require grouping of multiple counts." U.S.S.G. § 1B1.3(a)(2). The applicable Guideline here specifies more than one base offense level. The offense of conviction, for which section 2D1.1 is applicable, requires grouping under section 3D1.2(d). The defendant's attempt to possess the half kilogram of cocaine was clearly part of the same course of conduct or common scheme or plan as the offense of conviction: possession of the 85 grams with intent to distribute. Likewise, his attempt to possess the 500 grams was committed in furtherance of and/or in preparation for the offense of conviction. Thus, it is "relevant conduct" under the Guidelines and must be considered in sentencing.[2]

The majority argues that since the general theory of the Guidelines is limited to the "offense of conviction," relevant conduct to be taken into account in determining the base offense level must at least be limited to crimes of the same character as the substantive offense of conviction. However, the Guidelines don't speak of the "same character." Rather, they require that the other illegal conduct be in "preparation for" or in "furtherance of" the offense of conviction or, for drug offenses like the one in this case, "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1) & (a)(2).

Neither do the cases support the majority's contention that conduct must be "of the same character" in order to qualify as relevant conduct for sentencing purposes. That contention was rejected by this Court in *United States v. McDowell,* 902 F.2d 451 (6th Cir.1990), where the Court held that

---

**2.** The Commentary to the Relevant Conduct section makes clear that circumstances like those presented here are included. *See* U.S.S.G. § 1B1.3, comment. (backg'd) ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range.... [T]he applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged.... [I]n a drug distribution case, quantities ... of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the

same course of conduct or part of a common scheme or plan as the count of conviction.").

The majority rely on the use of the word "may" in Application Note 12 to § 2D1.1 to support their argument that the guidelines do not require the sentencing judge to consider relevant conduct. *See* Majority Opinion at 1049–50. This reliance is untenable. The relevant conduct guideline itself clearly directs that the base offense level *"shall* be determined on the basis of"* relevant conduct. U.S.S.G. § 1B1.3(a) (emphasis added). In addition, the

relevant conduct included conduct that was clearly *not* "of the same character" as the offense of conviction. There the defendant pled guilty to conspiracy to maintain a place for the distribution of cocaine and crack in exchange for dismissal of several substantive offenses, including distribution within 1,000 feet of a school. We held that the District Court should have considered the fact that the defendant operated his crack house within 1,000 feet of two schools as "relevant conduct" in calculating the defendant's base offense level. We recognized that the conduct for which the defendant was convicted, conspiracy, is of a different nature than the proximity-to-schools conduct. Indeed, two different guidelines apply. *See* sections 2D1.4 (conspiracy) and 2D1.3 (distribution within 1,000 feet of schools) (now deleted and consolidated with section 2D1.2). Nevertheless, this Court held "[t]hat the defendant ran a crack house and that he did so in close proximity to school buildings is certainly 'relevant conduct' within the meaning of section 1B1.3 of the guidelines." *Id.* at 454.[3]

The legislative history does not, in my opinion, suggest that the judge should first "determine at the outset of the sentencing process whether the case presents circumstances 'not adequately taken into consideration' by the Commission." Majority Opinion at 1045. Referring to section 3553(b), the Senate report explains:

> The bill requires the judge, before imposing sentence, to consider the history characteristics of the offender, the nature and circumstances of the offense, and the purposes of sentencing. He is then to determine which sentencing guidelines and policy statements apply to the case. Either he may decide that the guideline recommendation appropriately reflects the offense and offender characteristics and impose sentence according to the guideline recommendation or he may conclude that the guidelines fail to reflect adequately a pertinent aggravating or mitigating circumstance and impose sentence outside the guidelines.

S.Rep. No. 225, 98th Cong., 2d Sess. *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3235.

It is true that the judge is to consider the purposes of sentencing before determining which sentencing Guidelines or policy statements apply. I read that direction not as excusing the judge from applying the Guidelines, but to apply the appropriate Guideline.

Certainly, this legislative history does not provide a basis for ignoring the mandatory language of section 3553(b) that the court "*shall* impose a sentence of the kind and within the range" referred to in the Guidelines." (Emphasis added.)

Implicit in the majority's holding is unhappiness with the Sentencing Commission's departure from "charge offense" sentencing which it applies to most crimes, and "real offense" sentencing which the Guidelines apply in drug, embezzlement and other cases when the offense level is determined largely on the basis of the quantity of a substance involved or aggregate dollar amounts. There the Guidelines use amounts that "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. S.G. § 1B1.3(a)(2). The majority finds insufficient basis for this difference in treatment of these types of crimes. One may disagree with the approach taken, but it is

---

commentary to that section indicates that "quantities and types of drugs not specified in the count of conviction *are to be included* in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3, comment. (backg'd) (emphasis added). Furthermore, our previous decisions plainly instruct that application of Guideline 1B1.3 is mandatory. *See United States v. Miller,* 910 F.2d 1321, 1327 (6th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991) ("Sentencing Guideline § 1B1.3(a)(2) *requires* consideration of un-

charged relevant conduct" (emphasis added)); *Perez,* 871 F.2d at 48 ("the amount of the drug being negotiated, even in an uncompleted distribution, *shall be used* to calculate the total [a]mount in order to determine the base level" (emphasis added)).

3. *See also United States v. Bedoya,* 878 F.2d 73 (2d Cir.1989) (upheld inclusion of entire 21 kilograms of cocaine involved in a *conspiracy* charge, which had been dismissed in exchange for defendant's plea to *possession* with intent to distribute 500 + grams of cocaine).

hardly unconstitutional.[4] The Commission suggests that anything else would allow what is fundamentally the same conduct to receive different treatment depending on how the underlying offense or scheme is parcelled with remaining counts. This is a rational basis. As the Seventh Circuit pointed out in a case similar to the one before us, *United States v. White*, 888 F.2d 490 (7th Cir.1989), it makes little sense to have defendant's sentence depend on how much of the cocaine defendant intended to possess was actually in the package. The Drug Enforcement Administration could decide defendant's sentence by the amount of real cocaine it put in the package. There is always a risk that a controlled sale will fail for some reason and the purchaser get away with the drugs. The seriousness of defendant's unlawful conduct is neither increased nor decreased by what happened to be in the package. Here it is simply fortuitous that Davern actually possessed only 85 grams of cocaine rather than the 500 grams he sought and believed he had purchased.

Finally, the majority suggests that "the guideline enabling act may not permit an increased penalty for conduct outside the offense of conviction." Sentencing courts have historically taken into account the circumstances surrounding the offense of conviction and if it was part of a scheme, courts have considered the entire scheme. In embezzlement cases the total amount embezzled, even if a defendant was not charged with each act, was considered. In drug cases courts considered whether it was dealing with an isolated sale, a sale to sustain a habit, or a sale by someone who made his or her livelihood from drugs. The Guidelines, by requiring that the drug quantities be related to the same course of conduct, in preparation for the offense of conviction, etc., limit rather than enlarge the court's ability to consider other conduct. I see nothing in the enabling act which prohibited the Sentencing Commission from taking the approach it did.

Accordingly, I respectfully dissent.

---

**4.** This Court has said as much. *See United States v. Miller*, 910 F.2d 1321, 1329 (6th Cir. 1989) (Martin, J., concurring), *cert. denied*, — U.S. —, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991); *Smith*, 887 F.2d at 108 & n. 5.

ORDER.

Sept. 26, 1991.

Before: MERRITT, Chief Judge; KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, and SILER *, Circuit Judges.

A majority of the Judges of this Court in regular active service have voted for rehearing of this case en banc. Sixth Circuit Rule 14 provides as follows:

The effect of the granting of a hearing en banc shall be to vacate the previous opinion and judgment of this court, to stay the mandate and to restore the case on the docket as a pending appeal.

Accordingly, it is ORDERED that the previous decision and judgment of this court is vacated, the mandate is stayed and this case is restored to the docket as a pending appeal.

The Clerk will direct the parties to file supplemental briefs and will schedule this case for oral argument as soon as practicable.