993 F.2d 1548
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lathan TYLER, Hendri Graham, Shannon Sanders and Reginald
Robinson, Defendants-Appellants.
 Nos. 91-1584, 91-1918, 91-1585 and 91-1590.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1993.
 
 Before NELSON and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Court Judge.
 PER CURIAM.
 
 
 1
 Defendants, Lathan Tyler, Hendri Graham, Shannon Sanders, and Reginald Robinson appeal their jury convictions and sentences for drug trafficking. For the reasons that follow, we AFFIRM.
 
 I.
 
 2
 Working in concert, John Piner, Antoin Piner, and Rick Brown established a narcotics operation in Detroit, Michigan. They later decided to expand their operation by opening several drug houses in Flint, Michigan.
 
 
 3
 Defendant Hendri Graham delivered drugs to and collected money from the Flint houses. Defendant Lathan Tyler prepared and packaged cocaine base and counted bundles of money. Defendant Shannon Sanders served as a "lieutenant" for the drug organization. For three months, defendant Reginald Robinson rented automobiles for use by members of the drug operation. Shannon Sanders stated that by distributing through 20-30 drug houses, the organization monopolized the Flint cocaine market.
 
 
 4
 The government charged all four defendants with conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. The government brought additional charges against Shannon Sanders for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and use of a firearm during and in relation to a felony drug offense in violation of 18 U.S.C. § 924(c). The defendants were convicted and sentenced on all charges. These timely and consolidated appeals followed.
 
 II.
 A. Sufficiency of the Evidence
 1. Defendant-Robinson
 
 5
 The evidence case against defendant-Robinson is sufficient to support his conviction on appeal. The evidence reveals that defendant-Robinson's involvement in the conspiracy was apparently limited to providing rental cars for the criminal enterprise, either by renting them himself or by assisting others in procuring their rental. Those vehicles were then funnelled to other co-conspirators, usually through his friends, and co-conspirator, John Piner. The evidence unequivocally shows that the vehicles and their occupants were directly linked to the conspiracy. Special Agent Todd Bowden testified that defendant-Robinson's expenditures for rentals over a three-month time period exceeded five thousand dollars; and a security manager with Avis Rent-a-Car, William Moore, verified that defendant-Robinson's rental history supported the notion that he was involved in illegal activities.
 
 
 6
 Although defendant-Robinson's frequent presence at known drug houses and at discussions at which drug deals were negotiated is not sufficient by itself to sustain a guilty verdict, it is a "probative and material factor that the jury may consider in reaching its decision," see United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986) (quoting United States v. Kincade, 714 F.2d 1064, 1065 (11th Cir.1983)), and supports the notion that defendant-Robinson was well-aware of the existence of the conspiracy. From this evidence, the jury could have fairly concluded that defendant-Robinson knew that the conspiracy used the rental vehicles to facilitate its drug operations. When the evidence is viewed in its totality, the inference of guilt is apparent. Therefore, we affirm defendant-Robinson's conviction.
 
 2. Defendant Tyler
 
 7
 Previously convicted co-conspirator, Randy Hailey, testified regarding defendant-Tyler's knowledge of, and participation in the conspiracy. Hailey had agreed to sell drugs for the organization in Flint. To that end, Hailey received drugs from drug houses in Detroit, where he saw defendant-Tyler preparing and packaging crack cocaine for distribution. According to Hailey, defendant-Tyler and an accomplice prepared approximately 100 packages of cocaine for Hailey to sell in Flint, a fact clearly evidencing an agreement to sell drugs. This evidence, alone, supports, defendant-Tyler's conviction.
 
 
 8
 Detroit Police Officer Kenneth Tye also testified about defendant-Tyler's involvement in the conspiracy. Tye stopped defendant-Tyler's vehicle on numerous occasions, resulting in more than one arrest. On each occasion, Tye noticed that defendant-Tyler (1) frequently wore an expensive bullet-proof vest, (2) consistently wore expensive clothing and drove expensive cars, despite a lack of employment, (3) used a false name, (4) frequently visited areas near drug houses, and (5) actually visited drug houses that were controlled by the conspirators. Collectively, this evidence provides additional support for defendant-Tyler's conviction.
 
 
 9
 Defendant-Tyler's argument notwithstanding, the government did not rely on mere conjuncture, nor did it achieve a conviction by merely associating defendant-Tyler with the Detroit/Flint drug culture. With the aid of direct testimony and strong circumstantial evidence, the government produced evidence from which a jury could find each element of each crime charged against defendant-Tyler beyond a reasonable doubt. Thus, defendant-Tyler's sufficiency of the evidence claim fails.
 
 3. Defendant-Sanders
 
 10
 The government's case against defendant-Sanders is strong. The government introduced evidence that defendant-Sanders sold drugs for the criminal enterprise. In addition, when defendant-Sanders was arrested, he was found possessing guns and ammunition and he supplied a false name to an arresting officer. Most importantly, defendant-Sanders made elaborate incriminating admissions, while in custody on state charges, regarding his knowledge of and participation in the conspiracy. Therefore, his sufficiency of evidence claim, like defendant-Tyler's fails.
 
 B. Severance
 
 11
 Defendants-Tyler and -Robinson claim that their joinder in this action prejudiced their ability to defend against the charges alleged. Thus, they both argue that the district court erred in denying their Fed.R.Crim.P. 14 motions for severance.
 
 
 12
 We will not disturb a denial of a motion for severance unless the district court abused its discretion. United States v. Gallo, 763 F.2d 1504, 1524-25 (6th Cir.1985). To establish an abuse of discretion, the defendant must make a strong showing of prejudice. Id. at 1525. Because the factual bases of defendants' claims differ, we consider them separately below.
 
 1. Defendant-Tyler
 
 13
 Defendant-Tyler argues that the district court erred in denying his motion to sever after he was allegedly implicated in a co-defendant's confession. During Agent Bowden's cross-examination by counsel for defendant-Robinson, counsel asked if defendant-Sanders, while confessing, ever mentioned the name "Reginald Robinson." Before Bowden could answer, the district court sustained objections to the question. Defendant-Tyler contends that under United States v. Bruton, 391 U.S. 123 (1968) (a non-testifying co-defendant's confession that implicates another defendant violates the defendant's Sixth Amendment right to confrontation), he was prejudiced when counsel for defendant-Robinson merely suggested that co-defendant-Sanders' confession implicated other defendants, including defendant-Tyler. Defendant-Tyler's reliance on Bruton is misplaced. The question directed at Agent Bowden referred to defendant-Robinson only; it did not implicate defendant-Tyler. Furthermore, because no answer was permitted, there was no statement admitted implicating any other defendants. Thus, Bruton does not apply, and defendant-Tyler's argument fails.
 
 2. Defendant-Robinson
 
 14
 Defendant-Robinson claims that the district court's refusal to sever his trial caused a "spillover effect" that may have caused the jury to convict him based on evidence admitted against other defendants. He suggests that but for a spillover effect from evidence admitted against his co-defendants, he would not have been convicted.
 
 
 15
 Defendant-Robinson cites to remarks made by the district judge as proof that a spillover effect was possible and as proof that the jury was likely confused. The district judge, out of the jury's presence, communicated to the defense attorneys that the evidence against the defendants was overwhelming and that he was frustrated at the apparent lack of defenses available to the defendants. Defendant-Robinson suggests that if the district judge was so bewildered by the evidence that he failed to recognize defendant-Robinson's innocence, then the jury must have been similarly confused. We agree.
 
 
 16
 As previously noted, the evidence marshalled against defendant-Robinson was sufficient to support his conviction beyond a reasonable doubt. Furthermore, defendant-Robinson's argument notwithstanding, the district judge's commentary on the evidence smacks of clairvoyance, not confusion. Accordingly, we conclude that defendant-Robinson has failed to show that the denial of his motion for severance prejudiced his ability to prepare or assert a defense. His argument therefore fails.
 
 C. Speedy Trial Act
 
 17
 Defendant-Tyler claims that the district court deprived him of his right to a speedy trial, in violation of 18 U.S.C. § 3161(c)(1), by failing to start trial within seventy days of his arraignment.[1] Two hundred thirty-two days elapsed between the arraignment and the start of trial. In order to survive a speedy trial claim, the government must prove the existence of one hundred sixty-two days of excludable delay (232 - 70 = 162).
 
 
 18
 Congress chose to exclude from the seventy-day calculation, time "from the filing [of a pre-trial motion] through the conclusion of the hearing or other prompt disposition," see id. § 3161(h)(1)(F); and a reasonable period of time "when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." Id. § 3161(h)(7).
 
 
 19
 As acknowledged by defendant-Tyler, his last co-defendant, Cleoria Gibson, was not arrested until October 16, 1990, one hundred fifty-four days after defendant-Tyler's arraignment, a period excludable under § 3161(h)(7). In addition, a careful examination of the docket sheet reveals over sixty days of excludable delay resulting from pre-trial motions filed by defendant-Tyler. The two periods of excludable delay in combination exceed the minimum number of excludable days (i.e., 162) needed for us to conclude that the government complied with the seventy-day rule; accordingly, defendant-Tyler's claim fails.
 
 D. Suppression of Evidence
 
 20
 Defendant-Sanders claims that the government elicited involuntary statements from him in violation of his right to due process and right to counsel. Therefore, he argues, the district court erred in denying his motion to suppress evidence.
 
 
 21
 While defendant-Sanders was serving a prison sentence on a state conviction and before the initiation of any federal adversarial proceedings, Agent Bowden contacted defendant-Sanders at prison and inquired into his knowledge of the Flint/Detroit drug ring. Agent Bowden indicated that he was investigating an armed narcotics trafficking operation in Flint, that defendant-Sanders might be indicted, and that he was interested in defendant-Sanders' cooperation. On several subsequent occasions, defendant-Sanders telephoned Agent Bowden and made incriminating remarks. At a later date, Agent Bowden personally met defendant-Sanders at the prison. Defendant-Sanders waived his Miranda rights and made a number of statements regarding the details of the drug conspiracy, again incriminating himself and implicating a number of co-conspirators.
 
 
 22
 Defendant-Sanders now laments that "[w]ithout question, had [he] recognized that the very things he was saying to Agent Bowden could end up being the principle evidence against [him] in a federal trial, he would not have done that." He adds that "[i]f those statements made to Agent Bowden were indeed true, he would not have done that to himself." In essence, defendant-Sanders urges us to conclude that ignorance, alone, establishes the involuntary nature of his confession. Additionally, relying on the dissent in Kirby v. Illinois, 406 U.S. 682 (1972), he argues that the Sixth Amendment right to counsel attaches at any pre-trial confrontation "at which counsel would be necessary ... to assure a fair trial." We reject both of these positions.
 
 
 23
 After examining the totality of the circumstances surrounding defendant-Sanders' statements, we discern no basis for finding that Agent Bowden's conduct was objectively coercive. After defendant-Sanders was read his complete Miranda rights, he indicated his comprehension and waiver of the right to counsel, and he never requested an attorney. The evidence suggests that Agent Bowden's conduct was rather benign, especially in light of the fact that defendant-Sanders initiated most of the conversation by calling Agent Bowden collect. Based on these observations, we conclude that Agent Bowden's conduct was not objectively coercive. Defendant-Sanders argues that he was entitled to an attorney at his pre-arrest, pre-indictment custodial interrogation, at which he made incriminating statements. A waiver of the right to counsel after receiving proper Miranda warnings constitutes a limited relinquishment of the right to counsel under both the Fifth and Sixth Amendment. Patterson v. Illinois, 487 U.S. 285, 296 (1988).[2] Because defendant-Sanders waived his Miranda rights (as noted above), he also waived his Sixth Amendment right, if any, to counsel.
 
 E. Sentencing
 
 24
 Defendants-Graham and -Sanders argue that the district judge was inclined to impose sentences less than those computed under the Guidelines, but refused to act upon that inclination because he believed the Sentencing Guidelines were mandatory. Therefore, they both argue that their sentences should be vacated and their cases remanded for resentencing in light of United States v. Davern, 937 F.2d 1041 (6th Cir.1991) (vacated) (Guidelines are not mandatory when the court determines at the outset that a legitimate aggravating or mitigating circumstances ... [is] not adequately taken into consideration by the Guidelines). Defendant-Graham also argues that the district court erred by enhancing his sentence under § 2D1.1(b)(1) of the Guidelines for possession of a firearm during the commission of a drug trafficking crime.
 
 
 25
 During the pendency of this appeal, the panel's opinion in Davern was vacated by a vote to rehear the case en banc. In our en banc opinion, we rejected the previous panel's holding and found that a Guideline sentence is mandatory and that departure is justified only if the Guidelines fail to account for an aggravating or mitigating circumstance. United States v. Davern, 970 F.2d 1490 (6th Cir.1992) (en banc). Accordingly, even if the district judge wished to disregard the Guidelines, our en banc opinion precludes that course of action. Defendants' argument in favor of remand, therefore, fails.
 
 
 26
 The record supports the district court's two-level enhancement of defendant-Graham's sentence for "possession" of a weapon. Although it is true that defendant-Graham did not actually possess a firearm, there is ample evidence that his co-conspirators did. At the sentencing hearing, during oral argument, counsel for defendant-Graham conceded that defendant-Sanders, a co-conspirator, possessed a firearm during the period of the conspiracy. In addition, during various searches of the Flint drug houses, a loaded shotgun and a rifle were seized, and evidence in the record suggests that the weapons were closely associated with the activities of the conspirators. Therefore, the district court was not clearly erroneous in concluding that defendant-Graham's co-conspirators had actual and constructive possession of firearms during and in furtherance of the conspiracy. Because their possession imputes to defendant-Graham under United States v. Sanchez, 928 F.2d 1450 (6th Cir.1991), the two-level enhancement was justified. Accordingly, we affirm the district court's two-level enhancement under § 2D1.1(b)(1).
 
 III.
 
 27
 We AFFIRM the convictions and sentences of defendants-Tyler, -Graham, -Sanders, and -Robinson.
 
 
 
 [1]
 Defendant-Tyler's argument rests solely on 18 U.S.C. § 3161; no reference is made to the right to a speedy trial protected under the Sixth Amendment
 
 
 [2]
 The waiver is limited to the course of questioning at issue; the waiver does not extend to other stages of the criminal proceedings. Patterson, 487 U.S. at 293 n. 5