*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0221P (6th Cir.)
File Name: 02a0221p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

TIMOTHY R. HOPKINS,
    *Defendant-Appellant.*

No. 00-6032

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-20188—Jon Phipps McCalla, District Judge.

Argued: May 2, 2002

Decided and Filed: July 2, 2002

Before: MARTIN, Chief Circuit Judge; SILER and CLAY,
Circuit Judges.

---

## COUNSEL

**ARGUED:** Stephen B. Shankman, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN
DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant. Stephen P. Hall, ASSISTANT UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** Stephen B. Shankman, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN

1

DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant.   Thomas L. Parker, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

—————————

**OPINION**

—————————

BOYCE F. MARTIN, JR., Chief Circuit Judge.   After pleading guilty to the charge of possession of methamphetamine with intent to distribute it, defendant-appellant Timothy R. Hopkins was sentenced on July 28, 2000, to eleven years, three months in prison.  On appeal, he asserts two claims of error in connection with his sentencing.

I

First, Hopkins objects to the district court's admission, at the sentencing hearing, of statements he made to Memphis Police Officer Matthew Pugh on the day of his arrest relating to the quantity of drugs he had distributed.  The district court considered the statements in evaluating appellant's relevant conduct under the Sentencing Guidelines.  Hopkins does not dispute the truthfulness of the statements, but contends he made the statements only after Officer Pugh assured him that his cooperation could only help, not hurt him.  Hopkins contends Pugh's assurances implied that no self-incriminating information provided would be used against him.  By cooperating, appellant contends he accepted Officer Pugh's offer, thus forming an agreement cognizable under U.S.S.G. § 1B1.8(a):

Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the

applicable guideline range, except to the extent provided in the agreement.

After receiving testimony from both Officer Pugh and appellant Hopkins, the district court found that no § 1B1.8(a) agreement had been formed and admitted evidence of appellant's statements concerning drug quantity. Hopkins contends the district court erred in finding that no § 1B1.8(a) agreement had been formed.

The district court's factual findings are subject to review for clear error. *United States v. Clingan*, 254 F.3d 624, 625 (6th Cir. 2001). A factual finding is clearly erroneous when, though there is evidence to support that finding, the reviewing court, upon review of the record as a whole, is left with a definite and firm conviction that a mistake has been committed. *United States v. Ables*, 167 F.3d 1021, 1035 (6th Cir. 1999). On the other hand, if the district court's account of the evidence is plausible in light of the record as a whole, the reviewing court may not reverse it even if the court is convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id*. The district court's choice between permissible views of the evidence cannot, therefore, be clearly erroneous. *Id*. Further, to the extent appellant also challenges the district court's application of a particular Sentencing Guideline provision to the facts, a question of law is implicated, subject to *de novo* review. *Clingan*, 254 F.3d at 625.

There is no significant dispute concerning the nature of the assurances Officer Pugh made to appellant. On November 13, 1998, execution of a search warrant at appellant's residence in Memphis uncovered marijuana, methamphetamine, scales, guns and more than $20,000 in currency. Hopkins was present at the scene and was interviewed by Officer Pugh after being advised of his *Miranda* rights. Pugh explained to Hopkins that it was in his best interest to cooperate and that the more he cooperated, the more he could help himself, in terms of receiving credit for acceptance of responsibility. Pugh did not affirmatively

represent that Hopkins's statements would not be used against him.

Hopkins admitted at the sentencing hearing that Pugh's above-summarized testimony was truthful. He stopped short of saying Pugh had promised his statements would not be used against him. Instead, Hopkins testified that Pugh told him he could be looking at thirty years in prison and that it was in his best interest to cooperate; that it would help him, not hurt him. But for such assurances, Hopkins testified he would not have cooperated. He claimed to have understood the assurances to mean that his statements would not be used against him.

The district court carefully considered the testimony. Without questioning Hopkin's understanding, the district court simply found that no agreement not to use incriminating information had been reached. The district court appropriately observed that Hopkins gave the statements shortly after having been advised of his *Miranda* rights. Hopkins had thus undisputedly just heard Pugh explain that "anything you say can be used against you in a court of law." The district court further found that Hopkins knowingly waived his *Miranda* rights. That is, Hopkins was deemed to have understood that what he said could be used against him. Notwithstanding Hopkins's assertion that he understood Pugh's assurances to mean that his cooperation could only help him and not hurt him, the district court held that Officer Pugh had chosen his words carefully and had not agreed not to use Hopkins's statements against him. The record thus failed to establish the existence of a § 1B1.8(a) agreement.

We find no error in the district court's assessment of the facts. Hopkins's subjective interpretation of Pugh's assurances, even if accepted as genuine, is simply not reasonable in view of the fresh advisement of *Miranda* rights and is insufficient, standing alone, to substantiate the existence of an agreement. We concur in the district court's finding that no § 1B1.8(a) agreement was established.

of the sentence imposed and is properly deemed harmless error. The record, taken as a whole, offers no support for the notion that Hopkins's substantial rights were affected in any way.

### III

Accordingly, both of Hopkins's claims of error are denied and the judgment of the district court is AFFIRMED.

Based on the quantity of methamphetamine involved, the district court applied a base offense level of thirty-six, adjusted it upward by two points for possession of a firearm, and reduced it by three points for acceptance of responsibility. Locating the resulting total offense level of thirty-five in criminal history category III yielded a Guideline sentencing range of two hundred and ten months to two hundred and sixty-two months. The court then granted the government's motion for downward departure based on Hopkins's substantial assistance pursuant to U.S.S.G. § 5K1.1.

The government had requested a thirty percent reduction, because appellant's assistance, while substantial, was not as complete as it could have been. Hopkins contended he did all he could under the circumstances and argued for a fifty percent reduction. The court subtracted seventy-five months, or approximately thirty-five percent, from the low end of the Guideline range and imposed a prison term of eleven years and three months. The sentencing court explained that the size of the reduction was based on evaluation of the five factors set forth in § 5K1.1, including the significance, nature, completeness and timeliness of defendant's assistance, as well as the risk of injury posed by his assistance. Again, the statutory penalty range appears to have played no role in the calculus.

That Hopkins's sentence coincidentally fell within both the erroneous and the correct statutory penalty ranges is not, of course, determinative of the harmless error inquiry. What is determinative is the district court's explanation of its sentencing reasoning. This explanation distinguishes the instant case from *Kelly*. No, the district court did not expressly state that it would have imposed the same sentence irrespective of the statutory range. However, its explicit and exclusive reliance on Sentencing Guideline considerations makes it abundantly clear that remand for resentencing would be a useless and wasteful formality. Due to the clarity of the sentencing record, the district court's intentions are manifest. We can declare with confidence that any misapprehension of the governing statutory penalty range did not affect selection

The district court's application of the Sentencing Guidelines to the facts is also proper under the law. Although a purported cooperation agreement need not include explicit reference to § 1B1.8(a) to be enforceable, unless the agreement embraces reasonably definite immunizing consequences, the courts will not read them in. *United States v. Baird*, 218 F.3d 221, 228 (3rd Cir. 2000). Officer Pugh's assurances clearly did not include "reasonably definite immunizing consequences."

In *United States v. Ykema*, 887 F.2d 697, 699 (6th Cir. 1989), this court concluded that the government's plea agreement promise not to bring additional charges did not preclude use of incriminating information to enhance the defendant's sentence based on drug quantity. If the defendant wished to have broader protection, the *Ykema* court observed, he should have bargained for it. *Id*. at 699; *see also United States v. Roman-Zarate*, 115 F.3d 778, 781 (10th Cir. 1997) (holding that officers' promise that cooperation "would be helpful" to defendant could not reasonably be construed as a promise not to use incriminating information against him); *United States v. Evans*, 985 F.2d 497, 499 (10th Cir. 1993) (accord); *United States v. Rutledge*, 900 F.2d 1127, 1131-32 (7th Cir. 1990) (accord).

Consistent with these authorities, we conclude the district court made no error in admitting Hopkins's statements concerning drug quantities in determining his offense conduct under the Sentencing Guidelines. Neither was this use of the statements violative of the government's promise that Hopkins's cooperation would be helpful to him. Indeed, the promise was fulfilled, as Hopkins's cooperation resulted not only in credit for acceptance of responsibility, but also in a significant downward departure for substantial assistance under U.S.S.G. § 5K1.1.

## II

Second, Hopkins raises an objection that he did not raise in the district court. Because he did not raise it in the district court, it is reviewed only for plain error. Fed. R. Crim. P.

52(b). Before a reviewing court can correct an error not raised below, it must determine that there was (1) an error; (2) that is plain, i.e., well-settled in the law; (3) that affects substantial rights; and (4) that would result in a serious miscarriage of justice. *United States v. Ward*, 190 F.3d 483, 492 (6th Cir. 1999); *United States v. Dedhia*, 134 F.3d 802, 808 (6th Cir. 1998).

It is apparent that the sentencing court, as well as counsel, erroneously understood that Hopkins's sentence was governed by a statutory range of ten years to life, pursuant to 21 U.S.C. § 841(b)(1)(A)(viii) (for an offense involving fifty grams or more of methamphetamine). Because Hopkins pleaded guilty to an offense involving fifty grams or more of a *mixture* containing methamphetamine, the applicable statutory range is actually five to forty years, pursuant to 21 U.S.C. § 841(b)(1)(B)(viii). There is thus no question that an error occurred. The issue is whether the sentencing court so relied on the error as to affect Hopkins's substantial rights and cause a serious miscarriage of justice.

Hopkins insists he does not have the burden of showing that application of the incorrect range was determinative of his sentence. Rather, he argues the error should be presumed to have affected his sentence unless the record affirmatively shows otherwise. Indeed, in *Williams v. United States*, 503 U.S. 193, 112 S. Ct. 1112, 117 L. Ed. 2d 341 (1992), the Supreme Court addressed the misapplication of a Sentencing Guideline range as follows:

> [O]nce the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed.

*Id.* at 203. This approach has also been applied to the misapplication of a statutory penalty range, under circumstances similar to those here presented. *See Kelly v.*

*United States*, 29 F.3d 1107 (7th Cir. 1994). In *Kelly*, the Seventh Circuit made the following observations:

> Occasions in which this type of error are harmless seem to be relatively rare. The district court thought that it should pick a number between 10 and life. It came up with 35. What would have happened if (as it should have) it were choosing between 5 and 40? Could it still have been 35? Of course, but we cannot declare an error to be harmless just because, in a correct analysis, it is a mathematical possibility. Of course, the district court may indicate on the record that it would impose a particular sentence even if it were applying a different range. The government insisted at oral argument that the district court's adjustment of Kelly's sentence, designed to bring it into line with the sentences imposed on his co-defendants, puts this case into that category. But absent an express statement that the court would impose the same sentence even if a different range were applicable, it is difficult to imagine a case in which an appeals court could declare with the requisite degree of confidence that the application of an incorrect range would amount to a harmless error; we do not believe this to be such a case.

*Id.* at 1111.

The government does not quarrel with the *Kelly* reasoning, but maintains this is the rare case when the reviewing court can declare with confidence that the error was harmless. We agree. Hopkins was undisputedly advised at the time of his plea and in his presentence investigation report that the statutory penalty range was ten years to life. Yet, the record of the sentencing hearing is totally devoid of grounds to believe the error played any role in the imposition of sentence. The district court's sentencing calculations were explicitly articulated and were based exclusively on the Sentencing Guidelines, without even so much as a mention of the statutory range.