**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-4122**

───────────────

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

JAVIER IVAN CHAVEZ DOMINGUEZ, a/k/a Javier Ivan Chavez-Dominguez, a/k/a Javier Chavez Dominguez,

        Defendant – Appellant.

───────────────

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:23-cr-00255-WO-1)

───────────────

Argued:  December 12, 2024                    Decided:  February 6, 2025

───────────────

Before AGEE, THACKER, and BERNER, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge Agee wrote the opinion, in which Judge Thacker and Judge Berner joined.

───────────────

**ARGUED:**  Sarah Marie Powell, Durham, North Carolina, for Appellant.  Julie Carol Niemeier, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:**  Sandra J. Hairston, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

───────────────

AGEE, Circuit Judge:

In August 2022, Javier Chavez Dominguez was arrested on various state drug charges in North Carolina. After his identity and criminal history were confirmed, he was charged with Illegal Reentry after Removal Subsequent to Conviction for Aggravated Felony, in violation of 8 U.S.C. §§ 1326(a), (b)(2). Dominguez ultimately pleaded guilty and was sentenced to an upward variant sentence of 48 months' incarceration, to be followed by three years of supervised release. Dominguez now appeals that sentence, offering new arguments that he did not make before the district court. Because we discern no reversible error in the district court's handling of this matter, we affirm.

I.

A.

Dominguez, a citizen of Mexico, first entered the United States with his family in 2005 when he was 12 years old. Since then, he has established a lengthy record of deportations from and subsequent reentries into the United States. That record began in 2012, when Dominguez was encountered in Maricopa County, Arizona, while in possession of over 60 grams of black tar heroin, two handguns, and over $8,000 in U.S. currency. He was not immediately prosecuted for those offenses; instead, he was placed into removal proceedings and charged with remaining in the United States longer than permitted as a nonimmigrant. Soon thereafter, an Immigration Judge ("IJ") granted

2

Dominguez voluntary departure, with an alternate order of removal to Mexico. The next day, Dominguez voluntarily departed the United States.

Then, in December 2014, Dominguez was encountered by Customs and Border Patrol ("CBP") agents in Arizona who transferred him to local custody on the outstanding state warrant for the 2012 drug offenses. Dominguez pleaded guilty in Arizona state court to Felony Possession of Narcotic Drugs for Sale, and in January 2015, was sentenced to a suspended sentence—three months of probation with a condition of six months' imprisonment. Later that year, Dominguez was ordered removed from the United States by an IJ. He waived his appeal rights and departed the United States on foot.

In December 2017, CBP agents again encountered Dominguez while he was unlawfully present in Arizona. They reinstated his previous order of removal. He then pleaded guilty in the United Stated District Court for the District of Arizona to misdemeanor illegal entry in violation of 8 U.S.C. § 1325(a)(1) and was sentenced to 180 days in prison. After serving his sentence, Dominguez was once again removed to Mexico in June 2018.

Finally, in August 2022, Dominguez was encountered in Winston-Salem, North Carolina, in possession of distribution quantities of fentanyl. He attempted to flee from police, but was ultimately arrested and charged with two counts of Felony Trafficking Opium or Heroin, Misdemeanor Resisting Public Officer, and Misdemeanor Possession of Drug Paraphernalia.[1] The day of his arrest, an officer from Immigration and Customs

---

[1] Dominguez also initially gave the police a fake name—Luis.

3

Enforcement ("ICE") filed a federal criminal complaint charging Dominguez with Illegal Reentry after Removal Following Conviction of an Aggravated Felony, in violation of 8 U.S.C. §§ 1326(a), (b)(2). This was Dominguez's third illegal reentry to the United States in less than a decade.

### B.

Following his arrest in 2022, Dominguez faced both North Carolina state and federal criminal proceedings. The state proceedings took place first, with Dominguez pleading guilty in November 2022 to two counts of Felony Attempted Trafficking of Opium or Heroin, Misdemeanor Resisting Public Officer, and Misdemeanor Possession of Drug Paraphernalia. He was sentenced on those charges to a consolidated sentence of 10 to 21 months' imprisonment.

Upon release from state custody, Dominguez was detained in ICE custody until his arrest on the federal warrant. The federal proceedings—which eventually gave rise to this appeal—formally began in June 2023 when ICE officials filed a criminal complaint against Dominguez. That complaint was later superseded by a one-count indictment returned by a federal grand jury in July 2023. The indictment charged Dominguez with one count of Illegal Reentry after Removal Subsequent to Conviction for an Aggravated Felony, in violation of 8 U.S.C. §§ 1326(a), (b)(2). The "aggravated felony" conviction was specified in the indictment as the January 2015 Arizona conviction for Possession of Narcotic Drugs for Sale. And the "removal" element of the indictment referred to both the September 2015 and June 2018 removals.

4

Dominguez did not file any motions in the proceedings below, and in November 2023, entered a guilty plea to the indictment pursuant to a written plea agreement. At the plea hearing, Dominguez attested to the accuracy of the factual basis submitted by the Government. That factual basis outlined, among other things, Dominguez's prior charges and removal proceedings.

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSR") for Dominguez. The PSR reflected that he faced a statutory maximum imprisonment of 20 years, pursuant to 8 U.S.C. § 1326(b)(2), because his prior removal was subsequent to a conviction for an aggravated felony—the 2015 Arizona conviction for Possession of Narcotic Drugs for Sale. Dominguez's base offense level was enhanced by four levels for committing a felony offense before being deported or removed for the first time—the Arizona offense—and six levels for committing a felony offense after being ordered deported or removed for the first time—the North Carolina offense. After a reduction for acceptance of responsibility, his total offense level was computed to be 15. The PSR also reflected three convictions that counted for the purposes of criminal history points: the 2015 Arizona conviction for Felony Possession of Narcotic Drugs for Sale (2 points), the 2017 federal conviction for Misdemeanor Illegal Reentry (2 points), and the 2022 North Carolina conviction for Felony Attempted Trafficking Opium or Heroin (3 points). These prior convictions produced a total criminal history score of seven, resulting in a criminal history category of IV. With a total offense level of 15 and a criminal history category of IV, Dominguez's advisory Guidelines range was 30 to 37 months. Notably, he did not object to any aspect of the PSR.

5

At the sentencing hearing in February 2024, the district court confirmed that there were no objections to the final PSR, and consequently adopted it without change. Next, it heard the parties' arguments on the applicability of the 18 U.S.C. § 3553(a) factors. Defense counsel argued for a mid-range sentence, highlighting Dominguez's educational attainment, strong family ties, and efforts to financially support his three young children. The Government requested a high-end sentence, emphasizing his failure to be deterred by prior removals, as well as his pattern of committing drug offenses in the United States.

After weighing all the relevant facts and factors, the district court imposed an upward variant sentence of 48 months incarceration, to be followed by three years of supervised release. In imposing this sentence, the district court emphasized the seriousness of the offense (i.e., that it involved multiple unlawful reentries and drug distribution activity), as well as the need to protect the public, deter future crime, and promote respect for the law.

Judgment was entered on February 26, 2024. This appeal followed two days later. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 3742(a).

II.

Dominguez raises four main challenges on appeal. First, he argues that his 2015 Arizona conviction for Possession for Sale of Narcotic Drugs does not qualify as an "aggravated felony" such as to subject him to the enhanced penalties applicable under 8 U.S.C. § 1326(b)(2). Second, he contends that the September 2015 removal and June 2018

6

reinstatement that form the basis of his § 1326(a) conviction violated his due process rights because he claims they were the product of expedited removal proceedings. Third, he asserts that the district court erroneously calculated his Sentencing Guidelines range by including his 2022 North Carolina conviction both as part of its criminal history calculation *and* as the basis for an offense level enhancement. And fourth, Dominguez argues that the district court's imposition of an upward variant sentence was substantively unreasonable.

Because Dominguez concededly did not raise these objections before the district court, we review only for plain error.[2] *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). To establish plain error, Dominguez "must show that (1) an error was made, (2) the error was plain, and (3) the error affected his substantial rights." *United States v. Nelson*, 37 F.4th 962, 966 (4th Cir. 2022). And "[e]ven then, we will exercise our discretion to correct such an error only if declining to do so 'would result in a miscarriage of justice or would otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Green*, 996 F.3d 176, 185 (4th Cir. 2021)).

For the reasons explained below, we are satisfied that the district court committed no reversible error, much less any plain error.

---

[2] To the extent a different standard of review is applicable—e.g., with respect to Dominguez's substantive reasonableness challenge—the Court will set out the standard.

7

A.

Dominguez first asserts as error the district court's finding that his 2015 conviction for Possession for Sale of Narcotic drugs qualifies as an aggravated felony. The district court relied upon that finding in calculating his statutory maximum sentence. This determination was not clearly erroneous.

The statute under which Dominguez was charged—8 U.S.C. § 1326(a)—prohibits a noncitizen's unauthorized return to the United States following deportation, removal, exclusion, or denial of admission. The maximum statutory penalties for violating this provision depend on the defendant's prior criminal record. *See* § 1326(b). A noncitizen with no criminal history is subject to a two-year maximum sentence. § 1326(a). But if the noncitizen's removal was after a conviction for either (a) "three or more misdemeanors involving drugs, crimes against the person, or both"; (b) any non-aggravated felony; or (c) certain other specified grounds, the statutory maximum becomes ten years. *See* § 1326(b)(1), (3)–(4). And if a noncitizen's prior conviction was for an "aggravated felony," as defined by 8 U.S.C. § 1101(a)(43), the statutory maximum term of imprisonment is twenty years.[3] § 1326(b)(2).

---

[3] Relevant here, an "aggravated felony" includes "illicit trafficking in a controlled substance (as defined in section 802 of title 21), including a drug trafficking crime (as defined in section 924(c) of title 18)." 8 U.S.C. § 1101(a)(43)(B). Section 924(c)(2), in turn, defines a drug trafficking crime as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." And the Controlled Substances Act renders unlawful the possession of a controlled substance with intent to manufacture, distribute, or dispense the controlled substance. 21 U.S.C. § 841(a)(1).

8

For the first time on appeal, Dominguez challenges the classification of his prior Possession of Narcotic Drugs for Sale conviction as an aggravated felony. In his view, this crime was not an aggravated felony, and the Court should apply the categorical approach to correct the district court's erroneous classification. If his claim is correct, then the applicable statutory maximum at his sentencing would have been ten years rather than twenty. *See* § 1326(b)(1)–(2). Ultimately, though, we need not resolve what was the proper statutory maximum. Regardless of the merits of his argument, Dominguez has failed to show that the alleged error affected his substantial rights. This failure dooms his challenge. *See Nelson*, 37 F.4th at 966.

The primary impact of the district court's "aggravated felony" determination is that Dominguez was subject to a higher statutory maximum sentence than he otherwise would have been. *See* § 1326(b)(1)–(2). But that *alone* is insufficient to establish that any attendant error affected his substantial rights. In this regard, the Fifth Circuit's decision in *United States v. Castaneda-Lozoya* is instructive. 812 F.3d 457 (5th Cir. 2016). There, the Fifth Circuit faced a question almost identical to that presented here—whether the district court had plainly erred in concluding that the defendant was subject to the enhanced penalties under § 1326(b)(2), based upon his prior commission of an "aggravated felony." *Id.* at 460. In the end, the Fifth Circuit held that it was "unnecessary to analyze the intricacies of the modified categorical approach[,]" because the defendant failed to show that any "error affected his substantial rights." *Id.* In so finding, it observed that "[i]f the district court erred, it was in concluding that the statutory maximum for the offense was twenty years when it should have been ten." *Id.* But the defendant was sentenced well

9

below both potential maximums, and was only able to argue that "the 20-year maximum '*could* well have influenced the district court's selection of sentence.'" *Id.* (emphasis added). Given the absence of any evidence suggesting that the potentially inflated statutory maximum *actually impacted* the district court's sentence, the Fifth Circuit held that the defendant's "speculation d[id] not support a finding of reversible plain error." *Id.*

So too here. Dominguez is unable to set forth any evidence that the purportedly erroneous twenty-year statutory maximum affected his substantial rights. In other words, he has failed to "establish a reasonable probability of a different outcome—in this context, a lower sentence—absent the [alleged] error." *Nelson*, 37 F.4th at 969–70 (cleaned up). And on this record, it's not at all clear that he *could* do so. There is nothing in the sentencing transcript to suggest that the attributed statutory maximum sentence—twenty years—had any impact at all on the eventual sentence levied by the district court—four years. Rather, the district court focused only on the impact of the properly calculated Sentencing Guidelines, and the § 3553(a) factors. In fact, at sentencing, neither the district court nor counsel ever referenced the twenty-year statutory maximum or the fact that Dominguez committed an "aggravated felony."[4] He is thus left only to speculate that the allegedly improper statutory maximum sentence somehow impacted the sentence he received. Such speculation is insufficient to support a finding of reversible plain error. *Castaneda-Lozoya*, 812 F.3d at 460; *see United States v. Hopkins*, 295 F.3d 549, 553 (6th Cir. 2002) (finding

---

[4] Further, as was the case in *Castaneda-Lozoya*, the four-year sentence imposed here falls well below *both* potentially applicable statutory maximums—i.e., ten years or twenty years. *See Castaneda-Lozoya*, 812 F.3d at 460.

no plain error where the sentence imposed fell within both the correct and incorrect statutory ranges, and the district court's explanation for the sentence did not "even . . . mention [] the statutory range"); *United States v. McCloud*, 730 F.3d 600, 602 (6th Cir. 2013) (same); *cf. United States v. Watson*, 476 F.3d 1020, 1023–24 (D.C. Cir. 2007) (finding plain error where the district court recited incorrect statutory maximum and expressly based its sentence on that mistaken understanding); *United States v. Payano*, 930 F.3d 186, 196–98 (3d Cir. 2019) (same).

None of Dominguez's contrary arguments have merit. For instance, he cites *Nelson* for the proposition that an error in calculating the mandatory maximum sentence is of equal severity to an error in the mandatory minimum sentence, and thus presumptively merits a finding of plain error. But *Nelson* doesn't say that. As noted in *Nelson*, a mandatory minimum sentence makes it "so that the court has no discretion to go below what it . . . believes to be the statutory floor." *Nelson*, 37 F.4th at 970. So when a statutory minimum is incorrectly calculated, *and* the sentence imposed is at or near that minimum, we may presume that the same sentence would not have been imposed independent of the erroneous calculation. *See id.* This makes good sense—the statutory minimum provides a baseline below which the district court cannot deviate. If the sentence is at (or near) that baseline, it is fair to assume "a reasonable probability of a different outcome—in this context, a lower sentence—absent the [alleged] error." *Nelson*, 37 F.4th at 969–70 (cleaned up).

*Nelson* did not, however, purport to answer the question presented here—i.e., whether error may be presumed where the district court allegedly calculated an improper

11

statutory *maximum*. Indeed, it does not appear that any Fourth Circuit decision has addressed this exact question. But guidance from sister circuits suggests that the answer is a resounding no. *See Castaneda-Lozoya*, 812 F.3d at 460; *McCloud*, 730 F.3d at 602; *Watson*, 476 F.3d at 1023–24; *Payano*, 930 F.3d at 194–96. Instead, something more is needed. And that something more is a showing that the sentence imposed by the district court was somehow impacted by the erroneously calculated statutory maximum. *See, e.g.*, *Castaneda-Lozoya*, 812 F.3d at 460 (declining to find plain error where there was no evidence that the incorrectly calculated statutory maximum influenced the district court's "selection of sentence"); *Payano*, 930 F.3d at 196–98 (finding plain error where there *was* evidence that the incorrectly calculated statutory maximum influenced the district court's sentencing decision). Dominguez has failed to make such a showing here.[5]

## B.

The next issue raised on appeal concerns the constitutionality of Dominguez's prior removal proceedings. He contends that the September 2015 removal and June 2018 reinstatement that form the basis of his § 1326(a) conviction violated his due process rights

---

[5] The closest *Nelson* gets to announcing the blanket rule preferred by Dominguez comes toward the end of the opinion: "In the ordinary case, . . . a miscalculation of a Guidelines range . . . will be enough to establish the necessary effect on substantial rights. . . . [T]he same, of course, must be true when a district court . . . incorrectly calculates a *statutory* sentencing range . . . so that the court has no discretion to go below what it mistakenly believes to be a statutory floor." *Nelson*, 37 F.4th at 970 (cleaned up). But as this language makes clear, *Nelson*'s reasoning applies only to incorrectly calculated statutory *minimums*—i.e., ranges that the court lacks "discretion to go below." *Id.* And for the reasons already discussed, an incorrectly calculated statutory *maximum* differs in kind and does not implicate the same concerns.

12

"because they appear to have been the product of an expedited removal proceeding." Opening Br. 18. But Dominguez waived the right to make this argument by unconditionally pleading guilty.

When a defendant pleads guilty, he generally "waives all non[-]jurisdictional defects in the proceedings conducted prior to entry of the plea, and thus has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea." *United States v. Lozano*, 962 F.3d 773, 778 (4th Cir. 2020) (quoting *United States v. Fitzgerald*, 820 F.3d 107, 110 (4th Cir. 2016)). Consequently, after pleading guilty, a defendant may no longer "raise independent claims relating to the deprivation of constitutional rights that occurred prior the entry of the guilty plea." *Blackledge v. Perry*, 417 U.S. 21, 29–30 (1974) (cleaned up).

A narrow exception to this general rule permits post-plea claims that "challenge the Government's power to criminalize [the defendant's] (admitted) conduct[,]" and that "thereby call into question the Government's power to constitutionally prosecute." *Class v. United States*, 583 U.S. 174, 181–82 (2018) (cleaned up); *see Blackledge*, 417 U.S. at 30–31 (holding that the defendant's guilty plea didn't bar his claim of vindictive prosecution because the claim challenged "the very initiation of the proceedings against [the defendant]" and implicated the defendant's "right not to be haled into court at all upon the . . . charge"); *see also United States v. Chavez-Diaz*, 949 F.3d 1202, 1207–08 (9th Cir. 2020) (holding that "constitutionally-based appeals—despite an unconditional plea—" are permitted "where the appeal, if successful, would mean that the government cannot prosecute the defendant *at all*" (emphasis in original)).

13

A straightforward application of these principles compels the conclusion that Dominguez's guilty plea bars any constitutional challenge to the validity of his prior removals.[6] He does not "challenge the Government's power to criminalize [his] (admitted) conduct" or "call into question the Government's power to constitutionally prosecute him" under § 1326(a). *Class*, 583 U.S. at 181–82 (cleaned up). That is, Dominguez does not challenge the Government's power to "hale[] [him] into court *at all* upon . . . [this] charge," *Blackledge*, 417 U.S. at 30 (emphasis added), as is required to trigger the narrow exception outlined above, *see id.* at 29–30; *Menna v. New York*, 423 U.S. 61, 62 (1975); *Class*, 583 U.S. at 180–82. Instead, Dominguez's challenge focuses solely upon "case-related constitutional defects that occurred prior to the entry of the guilty plea"—i.e., the scope and validity of the 2015 and 2018 removal proceedings. *Lozano*, 962 F.3d at 779. His guilty plea rendered any such defects "irrelevant to the constitutional validity of the conviction." *Class*, 583 U.S. at 181 (internal quotations omitted). Accordingly, he is precluded from now raising this issue on appeal.[7]

---

[6] Indeed, the Ninth Circuit reached the same conclusion on a similar set of facts. *See Chavez-Diaz*, 949 F.3d at 1207–10 (holding that the defendant's guilty plea barred any potential due process challenge to his conviction under 8 U.S.C. § 1325 (illegal entry)).

[7] Other "case-related constitutional defects" that a defendant may not challenge post-guilty plea relate to whether evidence was obtained in violation of the Fourth Amendment, *see Haring v. Prosise*, 462 U.S. 306, 320 (1983); whether the indicting grand jury was unconstitutionally selected, *see Tollett v. Henderson*, 411 U.S. 258, 266 (1973); and whether the defendant's Sixth Amendment speedy trial rights were violated, *see Lozano*, 962 F.3d at 778–80. Like each of these potential defects, the purportedly deficient removal proceedings here do not call into question the Government's ability to criminalize the defendant's conduct at all. *See Class*, 583 U.S. at 181–82. Instead, they relate to an aspect of *this* prosecution that is potentially problematic, i.e., "case-related" constitutional defects.

14

Dominguez resists this conclusion by, in large part, avoiding it. Rather than facing it head on, he vaguely argues that the Government "fail[ed] to allege or proffer" sufficient evidence to support his § 1326(a) conviction. Reply Br. 24. A review of the record belies this claim. At the plea hearing, Dominguez "agree[d] with th[e] facts" proffered in the "written factual basis" filed by the Government. J.A. 52. And that written factual basis provided as follows: (1) in 2012, an IJ granted Dominguez voluntary departure with an alternate order of removal to Mexico if he did not voluntarily depart; (2) he voluntarily departed the United States on foot shortly thereafter; (3) in 2015, he was convicted of a Class 2 Felony for Possession of Narcotic Drugs for Sale in Arizona; (3) following his 2015 conviction, he was "ordered removed from the United States to Mexico," and was removed the following day; (4) in 2017, he was again encountered in the United States, at which point "designated officials . . . reinstated his order of removal"; (5) in 2018, following a conviction for Illegal Entry in violation of 8 U.S.C. § 1325(a)(1), he was again "removed from the United States to Mexico." J.A. 29–32. On this record, we cannot say that the district court erred, much less plainly erred, in concluding that for both the 2015 and 2018 removals, Dominguez departed or was removed from the United States while an order of removal was outstanding. We therefore reject his arguments to the contrary.

C.

The third issue raised by Dominguez concerns whether the district court procedurally erred in calculating his Sentencing Guidelines range. He maintains that it was plainly erroneous for the district court to include his 2022 North Carolina conviction both

15

as part of its criminal history calculation and as the basis for an offense level enhancement. We disagree.

Because the crux of Dominguez's argument relates to what constitutes "relevant conduct" under U.S.S.G. § 1B1.3(a)(1), our inquiry begins there. Section 1B1.3(a)(1) defines "relevant conduct" as "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction or . . . in the course of attempting to avoid detection or responsibility for" the offense of conviction. Such "relevant conduct," in turn, is to be included in the specific offense characteristics portion of a defendant's Guidelines calculation. U.S.S.G. § 1B1.3(a)(1). Importantly, if the conduct underlying a prior conviction qualifies as "relevant conduct," it *cannot* be considered a "prior sentence" for the purposes of calculating the defendant's criminal history category. § 4A1.2 cmt. n.1. In other words, "relevant conduct" folds into the offense of conviction; it cannot be used to *externally* enhance a defendant's Sentencing Guidelines (i.e., by inflating the defendant's criminal history category). It can only be used to *internally* enhance a defendant's Sentencing Guidelines (i.e., via specific offence characteristic enhancements).

Dominguez argues, again for the first time on appeal, that "at least one of [his] 2022 convictions (resisting a public officer by attempted flight) was 'relevant conduct'" to his illegal reentry conviction, and therefore "not countable for criminal history under § 4A1.2(a)(1)," nor for an enhancement "under § 2L1.2(b)(3)(c)." Reply Br. 31. Were this argument raised sooner, we would consider it on the merits. But instead, we are constrained by the deferential lens of plain error review. And viewing the record through that lens, we

16

cannot discern plain error in the district court's calculation of Dominguez's offense level and criminal history category.

To begin, Dominguez never proffered any evidence that his 2022 misdemeanor conviction for resisting a public officer—who was trying to arrest him on a state drug trafficking offense—was actually committed "in the course of or attempting to avoid detection or responsibility for [the illegal reentry] offense." § 1B1.3(a)(1). Rather, the only evidence relating to that conviction comes from the PSR and the Government's factual proffer to which Dominguez did not object. And neither of those documents help his case. The Government's factual basis indicates only that Dominguez provided the arresting officers with a fake name. The PSR provides similarly scant information, stating only that he "resisted arrest by fleeing on foot" from the officer that was trying to arrest him on a drug trafficking charge. J.A. 122. Moreover, the resistance charge was explicitly consolidated *with that drug charge*. Dominguez attested to the accuracy of these factual recitations, and even expressly declined to allege additional facts "in disagreement with the factual information in the PSR." J.A. 113. On this record, we cannot say that the district court plainly erred in concluding that he did not flee from officers "in the course of or attempting to avoid detection or responsibility for the [illegal reentry offense]." § 1B1.3(a)(1).[8]

---

[8] Indeed, with the little evidence we have, it is at least a similarly plausible reading of the record to instead conclude that Dominguez sought primarily to evade responsibility for the state drug trafficking and possession offenses—not the federal illegal reentry offense. § 1B1.3(a)(1).

17

The Fifth Circuit encountered a similar issue in *United States v. Vargas-Garcia*, 434 F.3d 345 (5th Cir. 2005).[9] There, the court held that "[i]t was not plain error (if it was error at all . . . ), for the district court to conclude that [the defendant's] evasion of and resistance to arrest after a traffic stop weeks before his indictment for illegal reentry was a separate prior offense." *Id.* at 350. The Fifth Circuit continued by observing that the "evasion of and resistance to arrest" could be "seen as embodying . . . conduct severable by time, place, and harmed societal interest[,]" meaning that such conduct should not be lumped in with the illegal reentry charge. *Id.* The same is true here, especially since the record suggests that Dominguez sought primarily to evade responsibility for the state drug offense.

To be sure, there is also case law that could point in the other direction. *See, e.g.*, *United States v. Rivera-Gomez*, 634 F.3d 507, 512–14 (9th Cir. 2011) ("[I]f [the defendant] resisted arrest in order to 'avoid detection or responsibility' for the illegal reentry offense . . . , and there is no other basis for holding that the resisting-arrest offense is not relevant conduct to the crime of conviction, the district court erred in accounting for the conduct as a prior sentence, rather than as part of the offense level."); *United States v. White*, 335 F.3d 1314, 1319–20 (11th Cir. 2003) (holding that where the defendant "gave a false name 'to avoid detection or responsibility for [the illegal reentry] offense,'" the district court "clearly erred" by assessing criminal history points for his "state false-information conviction"); *United States v. Butler*, 531 F. App'x 241, 245 (3d Cir. 2013) ("If [the defendant] presented false identification to avoid detection as an illegal reentrant,

_____

[9] This Court has previously cited *Vargas-Garcia* with approval, albeit in slightly different circumstances. *See United States v. Loza*, 580 F. App'x 229, 230 (4th Cir. 2014).

18

that conduct was relevant within the meaning of § 1B1.3(a)(1).”). But those cases do not alter the analysis here for two reasons.

First, in both *Rivera-Gomez* and *White*, the defendants (1) raised this issue before the district court at sentencing and (2) laid at least *some* factual foundation to support their arguments that their resistance was relevant conduct under § 1B1.3(a)(1). *See Rivera-Gomez*, 634 F.3d at 509–10, 512–15; *White*, 335 F.3d at 1316, 1319–29. Neither of those things happened here. And in *Butler*, the appellate court conducted a de novo review of the issue because the district court's conclusion rested on a "general construction" of the Sentencing Guidelines. *Butler*, 531 F. App'x at 245. Here, we do not know what the district court's conclusion rested on because the defendant did not object to the Guidelines calculation at sentencing. It could very well be that the district court simply found, as a factual matter, that Dominguez resisted arrest to avoid detection for the state drug trafficking charge—not the federal illegal reentry one. This case therefore does not neatly map on to any of *Rivera-Gomez*, *White*, or *Butler*.

Second—and perhaps more importantly—none of the case law just discussed comes from this Court or the Supreme Court. And for an "error to be plain and contrary to well-settled law," *United States v. Faulkner*, 950 F.3d 670, 678 (10th Cir. 2019) (internal quotations omitted), typically either this Court or the Supreme Court must have addressed the issue, *United States v. Walker*, 934 F.3d 375, 378 (4th Cir. 2019) ("In determining whether the district court committed a plain error, . . . we consider only whether, at the time of appellate consideration, the settled law of the Supreme Court or this circuit establishes that an error has occurred." (cleaned up)).

19

At bottom, there is simply nothing in the record to support Dominguez's new argument that he resisted arrest to evade detection or responsibility for the illegal reentry charge. Therefore, the district court did not plainly err in (1) implicitly concluding that the conduct underlying Dominguez's state conviction for resisting arrest was not "relevant conduct" to his illegal reentry charge, and (2) relying upon that state conviction to both apply an enhancement based on the specific characteristics of his illegal reentry offense and calculate his criminal history category.

D.

The final issue Dominguez raises on appeal relates to the substantive reasonableness of the district court's upward variant sentence. He maintains that the variance imposed was unreasonable and merits reversal. Once again, we disagree.

The reasonableness of a sentence is reviewed under the deferential abuse-of-discretion standard. *United States v. Torres-Reyes*, 952 F.3d 147, 151 (4th Cir. 2020) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). In conducting this review, we first consider whether the district court committed any significant procedural error, such as improperly calculating the Guidelines range, failing to consider the § 3553(a) factors, or failing to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51. In the absence of any procedural error, this Court considers the substantive reasonableness of the sentence, "taking into account the totality of the circumstances." *United States v. McCain*, 974 F.3d 506, 515 (4th Cir. 2020) (cleaned up).

20

Where, as here, the sentence imposed is outside the advisory Guidelines range, this Court considers "whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." *United States v. Nance*, 957 F.3d 204, 215 (4th Cir. 2020) (cleaned up). And when reviewing an upward variance, this Court "may consider the extent of the deviation," but must ultimately "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 212 (cleaned up).

The substantive reasonableness inquiry here is straightforward. For the reasons outlined above, the district court's imposition of Dominguez's upward variance sentence was free of any procedural error. *See Gall*, 552 U.S. at 51. Dominguez is thus left only to argue that, "taking into account the totality of the circumstances," the sentence imposed was unreasonable. *McCain*, 974 F.3d at 515. This is a high bar, and one that Dominguez cannot surmount. The district court expressly considered all the competing concerns here, *see* J.A. 61–75 (outlining the defendant's criminal history and emphasizing its skepticism with his purported reasons for being in the United States), "wrestl[ed]" with the different options it had, and ultimately imposed a sentence that represented an eleven-month variance above the high end of the correctly calculated Guidelines, J.A. 71–72. Under these circumstances, and in view of the "due deference" owed to the district court's sentencing decisions, *Gall*, 552 U.S. at 51, we decline to disturb the sentence imposed below.

21

III.

For the foregoing reasons, the district court's judgment is affirmed.

*AFFIRMED*